1830.

Astor
v.
Miller.

---

### Astor *vs.* Miller and others.

Where either real or personal estate upon which there is an outstanding mortgage, is turned into money, the rights of the mortgagee continue unaltered, and the court will direct the application of the money according to the rights of the parties as they existed previous to the alteration of the estate.

A mortgagee of leasehold premises who has never been in possession, or in the receipt of the profits of the estate, is not liable to an action upon the covenants contained in the lease, as the assignee thereof.

A mortgagee out of possession has both at law and equity only a chattel interest in the mortgaged premises; and the mortgagor, for every substantial purpose, is the real owner.

Where a covenant was contained in a lease, on the part of the lessee, to pay all taxes and assessments which might be imposed on the premises by au-

thority derived from the United States, the state of New-York, or from the corporation of the city of New-York, and an improvement was made by the corporation of New-York in the opening of La Fayette Place, which took a part of the leasehold premises, it was held that the lessee was chargeable with the amount of the assessment upon the interest of the lessor in the premises.

Where a covenant running with the land is devisable in its nature, if the entire interest in different parcels of the land passes by assignment to separate individuals, the covenant will attach upon each parcel pro tanto.

And the assignee of each part will be answerable for his proportion of any charge upon the land which was a common burden upon the whole, and will be exclusively liable for the breach of any covenant which related to that part alone.

March 16th.

THE complainant, in 1821, leased Vauxhall Garden in the city of New-York, to Timothy Madden for the term of fourteen years from the first of May 1825, at a yearly rent of $750. The lease contained the usual covenant for the payment of the rent; and also a covenant that the lessee and his assigns would pay and discharge all such taxes and assessments as might be imposed or rated on the premises or any part thereof, by authority derived from the people of the state of New-York, or of the United States, or from the corporation of the city of New-York. The lease also contained a clause of re-entry in case of the non-payment of the rent, or of the non-performance of the other covenants in the lease. In October, 1825, commissioners of estimate and assessment were appointed by the supreme court, on the application of the corporation of New-York, for the opening of La Fayette Place. In April, 1826, the commissioners reported, among other things, that part of Vauxhall Garden was required for the opening of La Fayette Place; that Astor was the owner in fee of the part required for that purpose, as well as of the rest of the premises; and that Madden was the owner of a leasehold interest therein. And the commissioners assessed the benefit of Astor as owner of the residue of the premises, over and above his damages from the loss of the part taken, at $4447. They also assessed the damage to the leasehold interest of Madden in the part taken at $5700, over and above the benefit to the premises which were left. This report of the commissioners were duly confirmed by the supreme court. In June, 1826, Astor filed his bill in this cause against Mad-

den and the corporation, claiming payment of the amount as-sessed on his interest in the property out of the amount al-lowed to Madden for his damages for the part taken. An injunction was granted; and afterwards, under an order of the chancellor, the amount assessed on the property of As-tor was paid into court by the corporation. The residue of the damages awarded to Madden, after deducting the costs of the corporation, was paid to him. Madden died before an-swer, and the suit was revived against his administrator. The corporation and the administrator of Madden put in their answer to the bill, submitting the claim of Astor to the deci-sion of the court. The cause was heard on bill and answer, and upon the, petition of certain creditors of Madden. In April, 1828, the late Chancellor Jones made a decree, by which it was declared that the assessment of $4447 upon Astor's interest in the premises was chargeable on the lessee, by virtue of the covenants in the lease, and that the estate of Madden was liable for the payment thereof; but that there was nothing in the pleadings which showed that Astor had any specific lien, upon the amount awarded to Madden, to the exclusion of other creditors of the latter. The chancellor therefore directed a reference to a master to take an account of the sums due to the complainant and to the other credit-ors of Madden, and also of the estate of the intestate. He also directed that the amount due to Astor for the assess-ment be paid in a due course of administration; that he be at liberty to insist before the master upon a right of priority in payment; and if he should establish such right by legal proof, on such reference, that the master report the facts to the court, with the reasons and grounds of his decision. Up-on the reference before master Hoffman it appeared that in August, 1824, Madden mortgaged his interest in the lease of Vauxhall Garden to the Mechanics' Insurance Company and Moses Hoyt, for $3469 19 and interest; that by virtue of this mortgage they claimed a specific lien upon the fund in court, and a preference in payment over other creditors. It also appeared before the master that in October, 1826, the sheriff of New-York sold to Mrs. Ehrick, under a judg-ment recovered subsequent to the mortgage, all the interest

of Madden in the leasehold premises; that in February, 1828, Mrs. Ehrick conveyed her interest in the premises which remained after the opening of La Fayette Place to Alexander Diver, for the consideration of $523,55; and that on the same day the mortgagees, in consideration of one dollar, also released to him all their interest in that part of the premises. It also appeared that in September, 1828, Diver conveyed the said premises to Joseph Hunt; and that in October of the same year Hunt conveyed the same to the complainant. The master, upon these facts, reported that the complainant had a right of preference or priority of payment for the amount of his assessment, out of the fund now in court arising from the damages awarded to Madden by the commissioners of estimate and assessment. The master also accompanied his report by a statement of the grounds and reasons of his opinion, as directed in the order of reference. To this decision and report of the master the mortgagees excepted.

*D. B. Ogden*, for complainant. The complainant is entitled to have the monies in court awarded to Madden for his damages applied to the payment of the sum assessed upon his (the complainant's) interest in the premises, for the opening of La Fayette Place. The complainant possesses a right of priority of payment out of this fund over every other creditor. His claim is paramount to that of the Mechanics' Fire Insurance Company and Moses Hoyt under the mortgage given by Madden upon the demised premises. The decretal order of Chancellor Jones decides that Madden, by virtue of the covenants in the lease from the complainant, was bound to pay the assessment against the complainant; but the chancellor did not decide as to the priority of the complainant's claim upon this fund. If it had been so decided, the reference upon this point to the master would have been unnecessary. The original lease contains a clause of re-entry for the non-performance of any of the covenants therein. The moment therefore Madden neglected or refused to pay the amount of the assessment, his term ceased and the complainant became entitled to the whole benefit of the lease and to the sum

awarded by the commissioners to Madden, to which Madden was only entitled by virtue of his leasehold interest in the premises. The present claimants of this fund had notice that it had been awarded to Madden, and they took no steps to secure their claims during his life. The Mechanics' Fire Insurance Company, as assignees of the lease, are liable to the covenants of the lessee. The authorities in support of this doctrine are cited in the report of the master. Any person taking an assignment of a lease, takes it with full notice of the covenants contained in it, and voluntarily submits to be bound by them. He takes it *cum onere*. An assignment by way of mortgage has the same operation as an absolute assignment. It is an assignment of the legal estate and must be accompanied by all the consequences of the ownership of such estate. Until the money is paid, the assignment is absolute. And the claim made under it at this time is upon the ground of the possession of the legal estate, which is equivalent to a possession of the premises. And the mortgagees have shown an act of possession of the premises on their part, by selling the same during the whole of the unexpired term of the lease. The monies awarded to Madden arise out of his interest in this estate under the lease from the complainant. Equity requires that he should not acquire a benefit under such lease to the injury of his landlord, by a breach of his covenants contained in the lease.

*P. A. Cowdry & D. T. Blake*, for Moses Hoyt and The Mechanics' Fire Insurance Company. The mortgagees of Madden had a specific lien upon the estate of the lessee, and they are now entitled to a priority of payment out of the fund in consequence of such lien. The complainant, by not paying the assessment, but suffering his estate in the leasehold premises to be sold for eleven years, has lost his claim upon his covenant. The liability of the lessee to the complainant rested in action merely, and the demand can only be on a par with other debts by specialty, while the mortgagee held a specific lien upon the estate of the lessee. If Madden had been alive at the time of the decree of the late chancellor, it is evident that the fund now in court would

1830.

Astor
v.
Miller.

have been ordered to be paid to him. If the mortgagee had applied to intercept this money, it is clear that as it was the proceeds of the estate mortgaged, it would, under the authority of the case of *Belcher* v. *Butler*, (1 Eden's Rep. 523,) have been directed to be paid to the mortgagee. A mortgagee of a leasehold estate not in possession is not liable upon the covenants in the lease. At common law it was formerly held that a mortgagee was seised of the legal estate, and after the estate became absolute by the non-performance of the condition, was liable to all the charges upon the mortgagor. (1 Powell on Mort. 6, 108. *Plaintiff's counsel arguendo in Eaton* v. *Jaques*, Doug. 442.) It is upon this obsolete doctrine that the decisions have been based, which made the mortgagee of a lease liable to the covenants contained therein. In the case of *Eaton* v. *Jaques*, (Doug. 438,) it was held that the mortgagee of a lease, if not in possession, should not be held liable upon the covenants contained in the lease. This doctrine is confirmed in the case of *Walker* v. *Reeves*, (cited in a note to Douglas, 444,) and in the case of *Chinnery* v. *Blackburne*, (cited in a note to 1 H. Black. 117,) and in *Jackson* v. *Vernon*, (1 H. Black. R. 114.) The doctrine laid down in the case of *Eaton* v. *Jaques* is recognized in 2 Cruis. Dig. 114, tit. 15, ch. 2, sect. 14, and in 3 Comyn's Dig. tit. Cov. ch. 3, p. 273. All the cases which seem to hold a different doctrine, proceeded upon the ground that the mortgagee held the legal estate. (*Stone* v. *Evans*, Woodfall's tenant Law, 113. *Lucas* v. *Comerford*, 1 Ves. jun. 235, *Williams* v. *Bosanquet*, 1 Brod. & Bing. 238. 3 J. B. Moore, 100.) But our courts hold that a mortgage is a mere security for money; that it does not pass the legal estate; and that the mortgagor is seised of the same. (*Green* v. *Hart*, 1 John. R. 591. *Jackson* v. *Willard*, 4 id. 42. *Hitchcock* v. *Harrington*, 6 id. 294. *Sedgwick* v. *Hollenback*, 7 id. 376. *Bunyan* v. *Mersereau*, 11 id. 538. *Wilson* v. *Troup*, 2 Cowen's Rep. 231.) And the doctrine in the case of *Eaton* v. *Jaques* has been expressly recognized in *McIntyre* v. *Scott*, (8 John. 162.) The mortgagee in this case cannot be considered in possession so as to become

1830.

Astor
v.
Miller.

liable to the covenants in the lease. And the possession of the money would not impose the same obligations as would the possession of the leasehold premises themselves. But if the mortgagee had taken possession of that part of the demised premises taken for La Fayette Place, he would not have been liable to the full amount of the covenants in the lease, but only to such portion of liability as attached upon his possession. (Comyn's Dig. tit. Covenant, ch. 3, p. 272. *Stevenson* v. *Lambard*, 2 East, 576. *Congham* v. *King*, Cro. Car. 221.) Nor would the mortgagee, although he should be considered in possession of the leasehold estate, be liable upon the covenant to pay the assessment in question, as this assessment was imposed, and the covenant broken long before the assignment of the lease. If covenants are broken before the assignment, the assignee is not liable. (Bul. N. P. 159, *Boulton* v. *Carron*, 1 Freem. 336. *Grescot* v. *Green*, 1 Salk. 199. *Church-wardens of St. Saviour's Southwork* v. *Smith*, 3 Burr. 1271, S. C. 1 W. Black. 351. *Taylor* v. *Shum and others*, 1 B. & P. 23. 1 Fonbl. ch. 5, sec. 6, note (g), p. 359.) The complainant having accepted an assignment of the lease, the same has become merged in the fee and the covenants have thereby become extinguished. (*Webb* v. *Russell*, 3 D. & E. 393. Shep. Touch. ch. 7, p. 160.)

THE CHANCELLOR. The decree of the late chancellor decides two questions which were not intended to be subject to the re-examination of the master on the reference; and that decision cannot be reviewed here on the exception to the master's report. In the first place it is declared and decreed that Madden the intestate, by the covenants in the lease, was bound to pay the amount assessed upon Astor's interest in that part of the premises which had not been taken for opening La Fayette Place; and that the estate of the intestate was chargeable with the amount of that assessment, to be paid in a due couse of administration. Secondly, it was declared and adjudged that the facts set forth in the bill and answers did not give the complainant any specific lien on the fund in the hands of the corporation, and which had been awarded to

the lessee for his damages. If either party was dissatisfied with the decree as to one or the other of these two particulars, the proper remedy was by an appeal from the decision of the court, or an application for a rehearing. The master is under a misapprehension in supposing the chancellor intended to refer it to him to review his decision on the last question, or to re-examine it himself on the coming in of the report. The claims of the different creditors of Madden, and their respective rights of priority of payment out of this fund, did not appear in the bill and answer. The chancellor anticipated that a different case might be presented as to the claims to priority between the complainant and other creditors of Madden, when their respective rights were proved before the master. The complainant was therefore permitted, notwithstanding this decision upon the facts stated in the pleadings, to insist upon and endeavor to establish by proof other facts which might entitle him to a priority in payment. The question now is, whether the new facts proved before the master give the complainant a right of preference which he was not entitled to on the facts stated in the pleadings.

Before proceeding to the examination of this question I will briefly notice an objection made by the counsel for the mortgagees of the premises. This objection is founded upon a fact which occurred since the making of the decree by the late chancellor. It appears that Astor has neglected to pay the $4447 assessed on his interest in the premises which remain, and has suffered that part of the property to be sold, for eleven years, to pay the amount. If the sum assessed on Astor's property had been raised by a sale of property belonging to Madden or to his estate, the claim of the complainant would have been extinguished. But I cannot see how a sale of the complainant's own property for that purpose could change the rights of the parties. He had his election to pay the money, or to permit his property to be sold to satisfy the assessment; and it can make no difference to the other creditors whether he paid it in the one way or the other.

The mortgage to The Mechanic's Insurance Company and Moses Hoyt did not appear in the pleadings, and is one of

the new matters produced in evidence before the master This mortgage was given by Madden upon the whole of the leasehold premises before any part was taken for the opening of La Fayette Place. It was therefore a specific lien upon Madden's interest in the part taken for that purpose. The damages awarded to Madden in lieu of that interest became a substitute therefor; and upon the principles of equity, the mortgage then became a specific lien upon the fund, instead of his interest in that part of the land. The rights of mortgagees are not altered by turning the estate into money; for the court directs the money to be applied according to the rights of redemption. (*Belcher* v. *Butler*, 1 Eden's R. 530.) The fund in court therefore belongs to the mortgagees, unless the plaintiff is entitled to it through them, by virtue of the covenants in the lease, they being considered as the assignees of the leasehold premises.

Whether a mortgagee of leasehold premises who has never been in possession, or in the receipt of the profits of the estate, can be sued on the covenants contained in the lease as the assignee of the lessee, has for a long time been a disputed question. In *Sparkes* v. *Smith*, (2 Vern. 275,) a bill was filed by the lessor to compel the mortgagee of a term to discover whether the lease was not assigned to him. The defendant insisted that he was never in possession of the premises, or in the receipt of the rents. The court said it was the mortgagee's own folly to take an assignment of the whole term by way of mortgage, and thereby subject himself to the covenants as assignee of the lease. But as he was only a mortgagee and had never been in possession, they would not assist the complainant to charge the defendant; but left the former to his remedy at law. In the subsequent case of *Pilkington* v. *Shaller & Jefferies*, (2 Vern. 374,) where a recovery at law had been obtained against a mortgagee under similar circumstances, the court of chancery refused to interfere for her relief. In the case of *Eaton* v. *Jaques*, (Doug. 438,) which came before the king's bench eighty years afterwards, the judges of that court unanimously decided that the mortgagee, under such circumstances, was not answerable upon the covenants in the lease. Powell sup-

poses the case of *Lucas* v. *Comerford*, (1Ves. Jun. 235,) decided by Lord Thurlow in 1790, to be directly in opposition to the decision of the king's bench in *Eaton* v. *Jaques* which had been made ten years previous to that time. (Powell on Mortgages, 241.) But upon examination of that case I see nothing inconsistent with the decision of the court of king's bench in the case reported by *Douglas*. It appears to be settled in England that a mortgagee, in possession, is liable on the covenants in the lease to the mortgagor. (*Traherne* v. *Sadlier*, 5 Brown's Parl. Cases, 179.) And Lord Thurlow only extended this principle to an equitable mortgagee in possession of a leasehold estate. It does not appear from the report of the case in *Vesey*, that the mortgagee was in possession, but it is more fully reported by *Brown*, where that fact distincly appears. (3 Brown's Ch. R. 166.) A case is mentioned by *Woodfall* of *Stone* v. *Evans,* decided by Lord Kenyon in 1799, in which he is said to have overruled the decision in *Eaton* v. *Jaques.* (Woodf. L. & T. ch. 3, § 18.) I should infer from the language attributed to him in *Woodfall's* note of that case, that the mortgagee had once been in the actual possession of the premises under the mortgage. But in a still later case, (*Williams* v. *Rosanquet*, East. term, 1819, 1 Brod. & Bing. 72,) which was argued before ten of the English judges, although the decision in *Eaton* v. *Jaques* was considered law by some, a great majority of them were of opinion that it had not been rightly decided. It may therefore be considered as now settled in England, that a mortgagee of leasehold premises is liable to an action on the covenants in the lease, although he has never been in possession of the estate, or received any benefit therefrom.

But I apprehend such a principle cannot be sustained here. In the English courts of common law, the mortgagee is still considered as the owner of the estate, and the mortgagor only as his tenant. (*Patridge* v. *Bere*, 1 Dow. & Ry. 272.) In this state, the mortgagee out of possession is considered at law, as well as in equity, as having nothing but a chattel interest in the estate; and the mortgagor, for every substantial purpose, is the real owner. (2 John. Dig. tit. Mortgage 111.) The master seems to have come to the same conclusion; but

he supposes that by taking the money awarded to the mort-
gagor for damages, the mortgagees are to be considered in
equity as having taken possession of the estate, and thus sub-
jected themselves to the burthen of performing the covenants
in the lease. As the court considers a fund arising from a
sale of the estate as a substitute for the estate itself, and suf-
fers the mortgage to attach on it as such, the conclusion of
the master may be correct in principle; but it is erroneous in
its application to the peculiar circumstances of this case. In
the view of the case which the master took, the mortgagees
could only be considered as assignees of that part of the lease-
hold premises which was taken for La Fayette Place. The
residue was sold under the judgment against Madden, and bid
in by Mrs. Ehrick. She conveyed the same to Diver, and
the mortgagees released to him all their claim thereon, for a
nominal consideration. It was therefore discharged from the
operation of the mortgage, and has since been transferred to
the complainant. Where a covenant which runs with the
land is divisible in its nature, if the entire interest in different
parts or parcels of the land passes by assignment to separate
and distinct individuals, the covenant will attach upon each
parcel pro tanto. (Touchstone, 199. Co. Litt. 385 a. *Van
Horne* v. *Crain*, 1 Paige's R. 455.) In such a case, the as-
signee of each part would be answerable for his proportion of
any charge upon the land which was a common burden, and
would be exclusively liable for the breach of any covenant
which related to that part alone. Under such a lease as was
given by the complainant in this case, if one half of the lease-
hold premises had been assigned by the lessee to A, and the
residue to B, each would have been answerable for the taxes
and assessments imposed upon their separate parcels of the
estate; but neither would be answerable for the amount as-
sessed upon the share of the other. By the act under which
a part of the premises was taken for the use of the public, (2
R. L. 417, § 181,) it is provided that if part of a lot is taken
which is under a lease or contract, all contracts and engage-
ments between the landord and tenant as to the part thus ta-
ken shall determine and be absolutely discharged, from the
time of the confirmation of the report of the commissioners;

but shall remain valid and obligatory as to the residue of the premises. There is also a provision that the dissolution of the relation of landlord and tenant as to that part shall not affect any agreement between the parties as to the payment of any assessment under the act. The assessment in this case was not imposed on that portion of the premises of which the mortgagees now claim the proceeds, but upon the part which remained. This part, I have already shewn, never came into the possession of the mortgagees, but passed to Mrs. Ehrick under the sheriff's sale. The covenant for the payment of the taxes and assessments thereon continued to run with that part of the leasehold premises, in her hands and in the hands of the assignees, until it was finally merged by the complainant's purchase of the outstanding term in October, 1828. Notwithstanding the sheriff's sale, the estate of Madden continued liable for the payment of the assessment in consequence of his personal covenant to that effect. Mrs. Ehrick and her assignees were also liable on the covenant as running with their interest in the land while they continued the owners thereof. But no assessment ever was imposed upon that part which was taken for the use of the public ; as to which the mortgagees may now be considered quasi assignees.

It is impossible therefore to give the complainant any prior claim upon the fund in court, without overturning the decision of the late chancellor, which I am inclined to think was correct ; and the result is that the master's report in this respect must be overruled. As the amount due on the mortgage exceeds the whole fund in court, the mortgagees are entitled to the whole in satisfaction of their mortgage debt.