## SAMUEL FELCH *et ux. versus* JOHN TAYLOR.

The obligor in a bond to a husband, conditioned to pay an annuity to the husband and wife during their lives and the life of the survivor, devises land upon condition that the devisee shall pay whatever may become due from year to year to the annuitants, according to the testator's contract with them. It was *held*, that the devisee, by accepting the devise, became personally liable for the annuity, and that the wife, who had survived the husband, and had elected to look to the devisee instead of the general assets of the testator, might maintain assumpsit for the annuity against the devisee.

The devisee having mortgaged the land to the defendant, covenanting that it was free from incumbrances, excepting the condition set forth in the will, and the mortgagee having entered and foreclosed the mortgage, it was *held*, that the mortgagee had become personally liable to pay the annuity, and that the wife might recover it of him in an action of assumpsit.

Such action having been brought after the defendant had entered and foreclosed the mortgage and sold the land, it was *held*, that he was liable for such portion of the annuity as had accrued between his taking possession and the commencement of the action, with interest from the date of the writ.

ASSUMPSIT. Upon a case stated it appeared, that on November 29, 1791, Michael Newhall executed a bond to Nathaniel Farnsworth, conditioned that Michael, his heirs, executors or administrators, should pay to Nathaniel and to Mary, his wife, the sum of six pounds annually, during their lives or the life of the survivor of them. On the same day Michael executed another bond to Nathaniel, conditioned that Michael, his heirs, executors or administrators should pay the sum of nine pounds annually to Nathaniel and Mary, or the survivor of them, during the life of Mary, the payment to commence after the happening of a certain event, which has long since occurred.

On February 19, 1812, Michael made his last will, wherein, after divers legacies and devises, he gives the residue of his estate, real and personal, to his son, Daniel Newhall, " upon condition that the said Daniel do pay all my just debts, funeral charges, and also do pay out and distribute all such legacies as is hereinafter directed, meaning also that he should pay whatever may become due to Nathaniel Farnsworth and Mary his wife, from year to year, according to my contract with them."

On the 1st of November following Michael died, leaving considerable real and personal estate, among which was a

farm occupied by him. Daniel entered into possession of the farm, by virtue of the will, and on June 1, 1818, conveyed it in mortgage to secure the payment of a sum of money to the defendant and to three others, who on November 9, 1819, assigned their interest in the estate to the defendant, whereby he became sole mortgagee of the same. The deed of mortgage, after describing the estate, contains the following exception, to wit, " excepting same condition as set forth in my father's will." On November 9, 1819, Daniel Newhall made a second mortgage of the estate to the defendant, containing the like exception. The defendant entered into possession of the mortgaged premises, on March 9, 1825, and continued in possession until September 8, 1828, when he sold the same to one Gardner, having previously foreclosed the right of Daniel Newhall to redeem the same.

Daniel Newhall gave bond in the probate office as executor of the will of Michael, soon after Michael's decease. The demands arising on the bonds from Michael to Farnsworth, were not filed in the probate office pursuant to *St.* 1788, *c.* 66, but the annual sums therein stipulated to be paid, were paid and indorsed on the bonds until 1824.

Mary Felch, one of the plaintiffs, was at the time of the execution of the bonds, Mary Farnsworth, the wife of Nathaniel, who has since deceased. Nathaniel died previously to the last payment made on the bond.

If upon the foregoing facts this action could be sustained, judgment was to be rendered for the plaintiffs, for a sum to be agreed upon by the parties or assessed by the Court ; otherwise the plaintiffs were to become nonsuit.

*J. Davis* and *Merrick*, for the plaintiffs, argued that the land was devised to Daniel Newhall upon condition that he should pay the annuity to Mary Farnsworth, now Mary Felch, that the annuity was a legacy, and that it was a charge upon the land in the hands of Daniel's assignee ; Com. Dig. *Condition, A* 4, *G* 1 ; ibid. *Covenant, C* 3 ; Bac. Abr. *Annuity, B, C* ; 1 Com. Contr. 5 ; *Hawks* v. *Saunders,* Cowp. 289 ; that the action was founded upon a promise implied by law, which proceeds upon the presumption of a consideration,

and here there was a sufficient consideration, the price which the defendant gave for the land being diminished by this incumbrance ; *Forster* v. *Fuller*, 6 Mass. R. 58 ; Bul. N. P. 133 ; that where a sum of money is charged on a devise, assumpsit will lie for it against the devisee or his assignee ; *Ewer* v. *Jones*, 2 Ld. Raym. 937 ; *Swasey* v. *Little*, 7 Pick. 296 ; that if land is granted by deed poll, on condition of paying money, assumpsit will lie against the grantee ; 1 Chit. Pl. 4 ; *Goodwin* v. *Gilbert*, 9 Mass. R. 510 ; *Fletcher* v. *M'Farlane*, 12 Mass. R. 43 ; that the devise to Daniel Newhall, created a trust, and the defendant, having notice, took the land subject to the trust, and assumpsit will lie for a breach of a trust ; *Smith* v. *Jameson*, 5 T. R. 601 ; *De Wolf* v. *Chapin*, 4 Pick. 59 ; Bac. Abr. *Uses and Trusts*, *E* ; and that as Mary Felch was not a party to the bonds given for her benefit, the plaintiffs were entitled to maintain this action of assumpsit, otherwise they would be without remedy.

*Hoar*, *C. Allen* and *Perry*, for the defendant, said that no one except the heirs of the devisor could take advantage of a condition annexed to a devise ; Bac. Abr. *Condition, E* ; that there was no legal consideration for the alleged implied promise, arising from Daniel Newhall's taking the land subject to the condition, and the cases cited only show that an equitable obligation is good to support an express promise ; *Mills* v. *Wyman*, 3 Pick. 207 ; that there was no express provision that this annuity should be a charge on the land, as in *Swasey* v. *Little*, and that the English decisions, according to which this devise would charge the land, proceed upon the principle of favoring creditors and can be of little avail here, where by law the lands of a deceased person are liable for the payment of his debts ; Bac. Abr. *Legacies and Devises, F* ; that the wife might have brought an action in the name of the administrator on the estate of Nathaniel Farnsworth, and by complying with the provisions of *St.* 1788, *c.* 66, § 4, 5, she might have had recourse to the land ; *Royce* v. *Burrell*, 12 Mass. R. 395 ; *Howes* v. *Bigelow*, 13 Mass. R. 384 ; that the provision in the will respecting the annuity was not a legacy, because it gave the plaintiffs

Felch
v.
Taylor.

nothing more than they were entitled to by law; Bac. Abr. *Legacies &c.* L; that the clause "according to my *contract* with them," leaves it uncertain which contract was meant, and so the provision in question was void; and that the exception in the deeds from Daniel Newhall to tne defendant was intended merely to secure the grantor against any claim of the plaintiffs, and not to create a new charge upon the land.

*Oct. 11th,*
1831.

*Per Curiam.* The first question to be considered is, whether Daniel Newhall became alone answerable for this annuity. There are several cases which show, that by ac cepting the devise, he assumed the obligation to pay the annuity, and that the annuitants' might elect to look to him alone for the payment; and the evidence proves that they made such election. It is not necessary to decide whether the effect of this was to charge the land. On the more general principle, that money paid to A for the use of B, may be recovered in an action by B, Mrs. Felch had a right of action against Daniel Newhall. In *Arnold* v. *Lyman*, 17 Mass. R. 400, the Court proceeded upon the ground, that although in such a case the actual party to whom the promise was made, might maintain an action upon it, yet that an action might also be maintained by the person who was to be benefited. In the case of *Dutton* v. *Poole*, 2 Lev. 210, T. Jon. 102, and 1 Ventr. 318, 332, where a father was about to cut wood to raise a portion for a daughter, but suffered it to stand in consequence of a promise made to him by the heir to pay the portion, the daughter was allowed to recover against the heir. In *Goodwin* v. *Gilbert*, 9 Mass. R. 510, land had been conveyed by deed poll, with a reservation of duties to be performed by the grantee for the benefit of the grantor; and it was held that the grantor might maintain assumpsit against the grantee for non-performance. It was objected there, that the plaintiffs should have declared on the deed; but the Court said, that as there was no covenant on the part of the grantee, the promise was implied, and assumpsit might be maintained. It was also objected that the promise was within the statute of frauds, there being no memorandum in writing signed by the grantee; but the

court said, that where the law raises the promise, it is not within the statute. This principle is applicable to the present case.

The devisor in effect says, I devise certain estate to my son Daniel, he paying, or on condition that he pays to Farnsworth and his wife, what I am under obligation to pay them, that is, the annuities. By accepting the devise he tacitly consents to comply with the condition, by paying the annuities, he becomes legally liable to pay them, and the law raises a promise by implication in favor of such party, to whom the annuity was payable.

The defendant argues, that the testator could not intend to create a debt against his son Daniel in this manner, as the annuitants had a claim against his whole estate. But a sufficient reason may be assigned for such provision. He probably did not choose to have the claim stand against the whole estate, and thus prevent a distribution; he, therefore, singled out one parcel of land, which he gave, on condition that the devisee should satisfy this claim, and the devisee, by accepting the devise, became answerable accordingly.

It was in the election of Nathaniel Farnsworth and his wife to resort to Daniel Newhall, or to come against the estate as general creditors; and there was a good reason for their preferring the former course, since in the latter they might have been obliged to sue every year for the annuity, or have lost it.

It is objected, that every creditor of the testator might come in and claim as a legatee against Daniel. Be it so. This provision in the will would affect only those creditors who should accept it; and if Daniel should accept the devise, he would be liable to pay all the debts of the devisor, and there seems to be no good reason why the creditors should not resort to him for payment of their demands.

Taking for granted that Daniel, by accepting the devise, assumed the obligation to pay the annuity, and that the annuitants elected to look to him, the question is, whether the charge was transferred to the defendant. And on this point the devise is immaterial, except by way of reference, for the purpose of showing what the nature and extent of Daniel's

12 *

own obligation was, because the deed itself under which the defendant took, creates the charge on him. The estate having become absolute by foreclosure, it may be regarded as if it had originally been absolute, and the defendant is to be considered as having taken the fee under an absolute deed containing the clause, " excepting same condition as set forth in my father's will."

The testator makes use of the word *contract*, in the singular number, but it is to be construed as embracing the two annuities, both standing upon the same ground.

The clause in the deed, "excepting same condition as set forth in my father's will," is not very technical, but the sense, we think, is obvious. The grantor means that the land is granted under the same condition, under which it was devised to him by his father's will. If he took subject to the pay-ment of the annuity, the defendant took in like manner, and became liable to pay the plaintiffs, upon which liability the law raises a similar implied promise to the plaintiffs, if they elect to avail themselves of it, and the plaintiffs show their election to hold him responsible for the annuity, by demand-ing payment of him in this action.

*Defendant defaulted.*

*Oct. 2d,
1832.*

The case came again before the Court, upon the question of damages.

*Merrick* contended, that the defendant's liability commenced when he took the mortgage ; *Groton* v. *Boxborough*, 6 Mass. R. 50 ; *Goodwin* v. *Richardson*, 11 Mass. R. 469 ; that being personal, it was not determined by his conveyance to Gardner ; and that in this action he was answerable for all the sums remaining due at the date of the writ, with interest from the times when they became respectively payable. *Dodge* v. *Perkins*, 9 Pick. 368.

*Hoar* and *C. Allen*, *contrà*, said that the defendant was-chargeable only in consequence of his being tenant of the land, and that his liability commenced on March 9, 1825, when he entered into possession, and terminated when he conveyed to Gardner. *Astor* v. *Miller*, 2 Paige, 68 ; *Mor-ris* v. *Mowatt*, ibid. 586 ; *Swasey* v. *Little*, 7 Pick. 296.

*Per Curiam.* A mortgage is to be regarded, to many purposes, as a pledge and security, until the mortgagee enters into possession, and except as between the mortgager and mortgagee, the mortgager is considered the owner. Before entry the mortgagee has not the beneficial use of the land, and without that we think the law will not imply a promise on his part to perform a condition of this sort. The opinion delivered in this case last year, proceeded upon the ground of a *personal* liability of the party who took the land subject to the condition of paying the annuity. Such liability was not discharged by his alienation of the estate. The defendant, therefore, must be adjudged to pay such portion of the annuity as accrued after his entry upon the land and before the commencement of the action, with interest from the date of the writ.