CHARLES B. PRATHER *v.* ERASMUS D. FOOTE AND THE EXECUTORS OF GEORGE G. BOWEN.

1. A lessor, who has entered upon the leasehold premises, under a clause of forfeiture for non-payment of rent, is not prejudiced by subsequently purchasing at sheriff's sale the interest of the lessee in the same premises.
2. When the lessor has entered for condition broken, and expended large sums of money in permanent improvements, with the knowledge of the

lessee and without any claim being made by him under the lease, the mortgagee of the leasehold premises, his mortgage having been executed prior to the forfeiture, will not, in a proceeding to subject the premises to sale for payment of the mortgage debt, be permitted to dispossess the lessor for want of proof on his part that the steps required to work a forfeiture were legally taken.

3. In such case, the mortgagee of the leasehold will be permitted to redeem; but the right of redemption only extends to the interest of the lessee at the time of the re-entry for condition broken; and the lessors are entitled to be fully indemnified for the value of all permanent improvements made by them, as well as to be paid all rent in arrear, taxes, and interest.

4. A devise in the following terms: "In the event that it should become necessary, in the opinion of my executors, to improve any of my unimproved real estate, I hereby, to effectuate this my desire, do hereby vest in my executors, full power and authority to dispose of any of my real estate, in fee simple, or for a term of years, or otherwise, in as full and large a manner in every respect as I could myself, if living," authorizes the executors to grant a perpetual leasehold, with the privilege of purchasing.

5. A mortgagee of the leasehold is not liable on the covenants unless he has taken possession.

GENERAL TERM.—Reserved from special term, by Storer, J., for the opinion of the entire court.

Action to foreclose a mortgage: the facts sufficiently appear in the decision.

*King, Anderson & Sage*, for plaintiff.

*Taft & Perry*, for defendants.

STORER, J., delivered the opinion of the court.

The questions involved in this case were argued at special term, and have been reserved, by the judge who heard them, for decision here.

The plaintiff seeks to foreclose a mortgage, which he claims to hold, upon certain leasehold property, described in the petition as situated at the north-west corner of Third and Elm streets, executed on January 5, 1850, and recorded on the same day. The plaintiff is the original mortgagee, and

the defendant, Foote, the mortgagor. The amount claimed as due is $450, with interest since July 4, 1850.

Answers have been filed by several of the defendants, the others are in default.

It appears by the pleadings and the facts agreed upon by the parties, which are made a part of the record, that the leasehold estate intended to be conveyed by the mortgage was held by Foote by a lease from the executors of George G. Bowen, deceased, executed June 30, 1849, and recorded in due time. By the terms of the lease, Foote was to enjoy a term of fourteen years in the property from August 1, 1849, rendering a yearly rent of $1,000, payable quarterly, the first installment to be paid on taking possession of the premises; the privilege of purchasing at any time during the term, was secured to the lessee, and if no purchase should be made, the lease, at the expiration of the term, was to be extended so that an estate for ninety-nine years, renewable forever, was to be created at the annual rental of $1,200, payable quarterly; the lessee to pay all taxes and assessments levied or imposed during the term, subject to the condition that if any quarterly payment should be in arrear for thirty days, or if the lessee should permit waste, either willful or voluntary, the lessors were at liberty to enter upon the premises, and hold them discharged from the lease as of their former estate.

Foote, the lessee, took possession in August, 1849, and made improvements to the value of $450. He paid the first quarter's rent, and gave his note for the second, upon which judgment was afterward recovered, but has not been paid.

In December, 1851, there being more than $1,500 due for rent, the lessors took possession of the premises, and have continued in the possession without any interruption or claim on the part of Foote, to the present time.

Foote, soon after the lease was made, became insolvent, and has never offered to pay any part of the amount due.

In the meanwhile all the estate and interest of Foote, in the lease, was sold by the sheriff of Hamilton county, upon

execution, to Gregory, one of the lessors, who received a deed for the same, and afterward released his purchase to the executors of Bowen, for the benefit of the estate.

After the lessors had recovered the possession of the property, and as they supposed, determined by their entry the estate of the lessee, they expended large sums of money in improving the property, the land being nearly, if not all, vacant, the amount of which exceeds $11,000, Foote, the lessee, and the plaintiff setting up no claim under the lease.

On November 25, 1854, when the lessors had thus improved the property, the plaintiff files his petition and claims to subject the entire premises, the leasehold interest as well as the improvements, to the payment of his mortgage.

Several important questions arise upon these facts. First: What is the effect of the mortgage from Foote to the plaintiff? Does it convey any estate? If it does, where is it? Does the description of the property define, with any certainty, the leasehold in controversy? for upon this depends our jurisdiction.

The language of the deed is: "That certain leasehold plot of ground, known as the corner of Third and Elm streets, being situated on the south-west corner of, and consisting of, say, one hundred feet on Elm street and sixty-five feet on Third street aforesaid, with the appurtenances." Where, then, is the property? There is no reference in any part of the deed to Cincinnati. The parties themselves are described as of Hamilton County. There is no reference even to the lease, by which the title of the mortgagor or lessee is asserted. But as the parties have not made the objection, and the case has been argued upon the hypothesis that the property mortgaged is the same that was leased, we may hold, for the purposes of the present controversy, that we have jurisdiction.

Second: The lease is made by the executors of Bowen; It is, in effect, the creation of an estate for ninety-nine

years, renewable forever, with the addition of a contract of sale, if the lessee within fourteen years shall consent to purchase at a stipulated rate.

Unless there is power conferred by the will to authorize such an estate to be created by the executors, it is very clear the lease is of no value, and consequently no right passed by the mortgage from Foote to Prather.

The testator, by the third clause of his will, provides, " in the event that it should become necessary, in the opinion of my executors, to improve any of my unimproved real estate, I hereby, to effectuate this my desire, do hereby vest in my executors full power and authority to dispose of any of my real estate, in fee simple, or for a term of years, or otherwise, in as full and large a manner in every respect as I could myself, if living."

We think the language of this clause conferred the right upon the executors to lease, and we are bound in the action to presume they exercised their power discreetly.

Third: The next and most important question is, what interest had the mortgagor in the leasehold estate when the action was commenced? If the right he held when the mortgage was executed was afterward divested by the failure on his part to perform the conditions of the lease, there is nothing left upon which a decree can operate.

The mortgagee of a leasehold estate, in many respects, may be regarded as the assignee of the term. Whether he is bound to perform the covenants of the lease to rebuild, repair, or pay rent, has not, to our knowledge, been judicially settled in Ohio.

In England, though it was held, Dougl. 454, *Eaton* v. *Jaques,* that he was not unless he took possession, it has since been decided, 1 Ves. Jr. 235, *Lucas* v. *Comerford,* and in the later case, 1 Brod. & B. 238, *Williams* v. *Bosanquet,* that the mortgagee is liable, whether he takes possession or not.    2 Cruise, 11, tit. 15, ch. 2, §14.    The same doctrine seems to be held in New Hampshire and Virginia; 4 N. H. 251, *McMurphy* v. *Minot;* 4 Leigh, 69, *Farm. Bank* v. *Mut. Ass. Soc., etc.*

The courts of New York have adopted a different rule, 2 Paige, 68, *Astor* v. *Miller;* 5 Wend. 603, *Astor* v. *Hoyt,* placing the liability of the mortgagee of a leasehold out of possession on the same ground as the mortgagee of any other chattel. We think this is the better and more equitable rule, and adopt it, but we must still hold, that though there may be no liability over to the lessor, the mortgagee may pay off any and every incumbrance of the estate, and if he is desirous to protect himself, it is his duty to do so, if he wishes to prevent a forfeiture for condition broken.

Here a large amount of rent was due, and the current taxes unpaid; with the full knowledge on the part of the mortgagor, possession was taken and his tenants removed; from that time until the present day, he has set up no claim, offered to pay no rent, nor discharge the taxes; meanwhile, under the belief that the lessee's title was abandoned, the lessors have expended large sums of money to improve the estate, with the clear and open avowal that they regarded the terms granted to the lessee as no longer existing.

Is this such a case as will permit the lessee to ask relief from the forfeiture? If we regard the entry for condition broken to have been properly made, the lease became of no value by its express terms. The language is: "And the same to have again, repossess and enjoy, as in their former estate." In other words, the tenancy expired "*ex vi termini,*" and the lessors were remitted to their original possession, not only as against all the supposed rights of the lessee, but all who claimed under him.

We find the law well stated in Sheppard's Touchstone, 154, as follows: "Where a landlord enters for a condition broken, he avoids all charges and incumbrances put upon the land by the tenant after condition made, for he is then seized of his first estate, and must have it in the same plight it was when he parted with it."

But the entry was not only made for condition broken, but under a claim by purchase, at sheriff's sale, of the mortgagor's interest in the term, and whether the lessors

obtained, by their deed, a perfect title to his interest under the lease, as against the plaintiff, it is, in our view, immaterial in the aspect of the case. The legal estate and the possession are rightly in the defendants as executors of Bowen, who were the original lessors. That possession can not be disturbed by the mortgagor or his mortgagee.

It is equally immaterial, we apprehend, what the effect of purchasing the estate was upon the affirming or disaffirming of the lessee's interest in the lease, though we apprehend there is no difficulty in determining the legal effect. A sale under execution does not, we suppose, create an estoppel against the purchaser. He obtains the benefit of no covenants to protect his title, and the rule, as applied to him, is *caveat emptor.* He can make no admission by bidding at the sale, nor by the reception of the sheriff's deed; neither confer any title, unless it existed in the debtor at the time judgment was rendered against him. If he had no such right, the buyer purchased at his peril.

If, however, the entry is not proved to have been technically legal, as required by the strict rule in relation to forfeitures, what is the plaintiff's position in that view of the case?

The law can not now be doubted, that a demand for the payment of rent, reserved by lease, should be made upon the premises during the last hour of the day it became due, and that no more should be demanded than was absolutely due, before there can be a valid entry for condition broken. But there may be, and there certainly is a very serious doubt, whether it is required, in a case like this, to show, affirmatively, the usual prerequisites to make an entry effectual.

It is stated in the agreed case, that the lessee paid no rent for more than two years; that it was demanded of him so often that the witness became tired of the effort, and gave up the attempt; and from the conduct of the lessee, as it appears from other parties and the testimony, there could be no hope, not the most distant, that he would be able to

pay, or was even disposed to pay the rent. He permitted the premises to be occupied by a class of tenants whose possession directly tended to impair the value of the property, and produce the conviction that he was utterly careless of the obligation of his lease.

We might, we think, without any conflict with the settled law, have regarded the evidence of a formal demand as sufficient for all practical purposes. When a party neglects to perform his contract, for a length of time that it is proved the mortgagor did in this case, and was, in addition, utterly unable to pay, it would seem to have been a vain thing to have pressed him further.

If we grant, however, that the plaintiff has made out a case where the lessee is entitled to be restored to the possession, two other questions arise:

First: On what terms may he be relieved?

Second: To what extent and upon which property shall the mortgage operate as security?

Had no improvements been made, and the property were in the same plight now as when the mortgage was given, we suppose there could be no relief until all the rents in arrear, the taxes and assessments were paid, and all the interest thereon should be first tendered. The lessors in possession could not be required to part with their security until all past indebtedness was discharged. When a party applies for equity, he must do equity, and there could be no other rule upon which a chancellor could decree relief. The condition of the mortgagor of the leasehold is that of the mortgagee. Both are to be controlled, by the action of the court, from committing a wrong, though entitled to every remedy which we can, in justice to rights of others, impart.

Upon this view of the law, we may ask to what extent, and upon what property, may we permit the mortgage to operate?

As a general rule, all improvements made by the mortgagor in possession, inure to the benefit of the whole estate. The value is supposed to be thereby improved, and they

are therefore regarded as made for the benefit of the mortgagee.

In 5 Bingh, 427, *Doe* v. *Giles*, it is said, " a mortgagor resembles a person who has executed a statute or recognizance.    Whatever is done to give value to the property under pledge, is done for the benefit of the creditor."    See also 4 Metcalf, 310, *Winslow* v. *Merchants' Ins. Co.;* 25 Maine, 209, *Heath* v. *Williams;* 14 Pick. 377, *Hunt* v. *Hunt.*

But the mortgagor did not make the improvements. They were not erected by his permission even, except implied from his silence while the work was going on.    They were, on the contrary, placed upon the premises by the lessors, when they claimed to be in the possession of their original estate, and therefore antagonist to the lessee.  They expended a large sum in good faith, with the full belief they had the right to do so, and, we think, were justified by existing circumstances, to take the course they did.

Can the mortgagee now ask, with any claim of equity, to subject the improvements thus made, to the payment of his debt?

It is certain that where a purchaser, after the conveyance, or even before the conveyance, in prospect of the articles of sale being carried into execution, has laid out money in lasting improvements, will be allowed the benefit of them where a court of equity is sought to relieve against the purchase; and it is said by Mr. Sugden, that there are few cases where this rule does not prevail ; 3 Sug. Vend. 436, §52.

In 1 Story, 478, 495, *Bright* v. *Boyd,* Story, J., remarks : " It appears to me that the denial of all compensation to a *bona fide* purchaser, where he has manifestly added to the permanent value of an estate by his meliorations and improvements, without the slightest suspicion of any infirmity in his own title, is contrary to the first principles of equity."    See also 1 Wash. Va. 434, *Southall* v. *McKeand;* 3 J. J. Marshall, 55, *Craig* v. *Martin.*

This equitable principle is the foundation of the occupying claimant's law, which we suppose is but the affirmation of a

rule always recognized by the courts of equity, and without the assertion of this, their decrees could not effect substantial justice.

We conclude, then, that the lessee can not be relieved against the entry of the lessors, unless they are fully indemnified for the value of the improvements they have made, and the right of the plaintiff is coextensive with that of the lessee and mortgagor, of no more validity and entitled to no more consideration.

The only interest in the property that we can subject, is the right, if any, of Foote in the original lease as it existed when the lessors re-entered for condition broken. This is independent of all improvements since made, and is subject, moreover, to the payment of all rent in arrear, taxes and interest which must be first discharged from the proceeds of the sale of such interest.

If the plaintiff wishes a decree upon these terms, and can find a possibility that he can save a part of the debt by the sale of the mortgagor's estate, thus incumbered and circumscribed, he is at liberty to take it.

Remanded for decree.