Crane *v.* City of Elizabeth.

36  339
57  537

Jonathan H. Crane, appellant,

*v.*

The City of Elizabeth, respondent.

The charter of Elizabeth requires that in laying out and opening streets compensation must be made to the *owner or owners* of lands and real estate taken for the improvement.—*Held*, that this does not require compensation to be made to mortgagees specifically; that the compensation is to include the value of all the interests burdened by the public easement, and is to be paid to the *owner* of the land if no other claimant intervenes, and if, in any case, such owner ought not in equity to receive the whole, timely resort must be had to the court of chancery, which will see to the equitable distribution of the fund.

On appeal from a decree advised by *Hugh M. Gaston, Esq.*, advisory master.

*Mr. Foster M. Voorhees*, for appellant.

*Mr. Frank Bergen*, for respondent.

The opinion of the court was delivered by

Dixon, J.

The appellant is the holder of a mortgage on lands in the city of Elizabeth, given and duly recorded on June 1st, 1870. The city, in March, 1869, commenced proceedings, under its charter, for the laying out and opening of an avenue through these lands, in the course of which an award for the land taken was made to the mortgagor as owner in July, 1870, which award was paid to the mortgagor in April, 1871, and thereupon the avenue was opened. The appellant, seeking satisfaction of his mortgage, asks to have the land sold free from the easement of the public highway. No objection is urged against the municipal proceed-

ings except that they did not result in making compensation to him for the interest which he as mortgagee had in the land taken; and the sole question for decision is whether, for want of such compensation, his lien remains unimpaired.

Our constitutional provision, that private property shall not be taken for public use without just compensation, is limited by the added clause that land may be taken for public highways as before, until the legislature shall direct compensation to be made. *N. J. Const. Art. I. ¶ 16.* The effect of this whole enactment has been adjudged by this court to be that all land required for streets, in any municipality of the state, may be taken for such uses upon making therefor the compensation fixed by the municipal charter, no matter whether it be just or unjust. *Simmons* v. *Passaic, 13 Vr. 619.*

Consequently, we are brought to the inquiry whether, by its charter, the city of Elizabeth is directed to make compensation to mortgagees of land, before their interests can be subjected to the easement of a public highway.

The ninety-second section of the charter (*P. L. of 1863 p. 109*) authorizes the city council to take and appropriate lands and real estate for the purposes of laying out and opening streets &c., upon making compensation to the owner or owners thereof, as thereinafter mentioned and provided. The ninety-fifth section directs that whenever the council shall determine to lay out and open any street &c., and to take and appropriate for such purposes any land and real estate, they may treat with the owner or owners thereof for the same, and may purchase such lands and real estate from the owner or owners thereof, and make such compensation therefor as they shall judge reasonable; and thereupon shall receive from such owner or owners a conveyance of such lands and real estate to the city. The ninety-sixth section provides that, in case no agreement for such purchase can be made, the council may appoint commissioners to make an assessment of the damages that any such owner or owners will sustain by taking and appropriating the lands and real estate; and that, in estimating and assessing such damages, the commissioners

shall have due regard both to the value of the lands and real estate and to the injury or benefit to the owner or owners thereof; and shall specially estimate and assess the value of the lands and real estate necessary to be taken.  The ninety-eighth section directs the commissioners to give notice, by newspaper advertisement, of their first meeting, and to make a just and true estimate and assessment as aforesaid; which, being ratified by the council, shall be binding and conclusive upon the owner or owners of such lands and real estate.  It also directs said commissioners to cause said lands to be converted and used for the purposes aforesaid; and provides that persons conceiving themselves aggrieved may appeal to the supreme court for a jury trial.  The ninety-ninth section authorizes persons entitled to the award to sue for and recover the same in an action of debt. The one hundredth section directs the city treasurer to tender and pay to the owner or owners of such lands and real estate the amount of such estimate and assessment of damages due to him or them; but if such payment cannot be made, the council is to cause the same to be placed at interest, on good security, for the use of the person to whom it may be due, to be paid on demand to the person or persons entitled thereto.

These provisions clearly indicate two things: first, that the award for each parcel of land is to include the value of the land; and, second, that the award is, in the regular course of charter proceedings, to be paid to the class of persons designated as owners of the land.  Under these circumstances, what persons are so described?

The term "owner," as applied to real estate, is undoubtedly one of variable meaning.  Thus, in contracts of insurance, it has received much latitude of interpretation, so as to embrace persons entitled to particular estates and equitable interests, where such construction was necessary to preserve the validity of the policy, or prevent the forfeiture of rights under it.  *May on Ins.* § *285.*  Likewise, in statutes providing compensation to owners for lands taken for public use, where the constitution required that special interests should be paid for,

similar scope has also necessarily been given to the language, in order to render the acts consistent with the fundamental law. Thus, in *Ellis* v. *Welch, 6 Mass. 246*, and *Parks* v. *Boston, 15 Pick. 198*, it was held to include every person having a valuable vested interest in land, capable of being damnified by the laying out of a street, because a narrower construction would have infringed upon the constitution of the commonwealth. But in *Watson* v. *N. Y. Cent. R. R. Co., 47 N. Y. 157*, where, upon the same principle, it was urged that the phrase " owners of land " should embrace judgment creditors of the legal owner, the court refused to construe it so broadly, because the remedies of such creditors against the land were supposed to be subject to legislative supersedure, by the power of eminent domain, without compensation. Whether this reason was sound in law need not be here considered; the case is cited merely to mark the limit of the ground upon which an extended signification of the word " owner " is adopted.

In the charter now under consideration no cause is found for going beyond the ordinary meaning of the language used. The act is equally valid, whether it be liberally or strictly interpreted, for the legislative will, as expressed in its provisions, is the final measure of the rights of persons concerned. Hence we are called upon to apply to this charter the primary rule that in statutes and contracts words are to be received in their common acceptation.

According to this acceptation, a mortgagee of land is not the owner, as has been frequently adjudged in this state. *Wade* v. *Miller, 3 Vr. 296 ; Shields* v. *Lozear, 5 Vr. 496, 503 ; Kircher* v. *Schalk, 10 Vr. 335.*

In the possible complications of legal and equitable estates, and of estates in possession, remainder and reversion, it may sometimes be difficult to point out " the owner," but where, as in the present case, there is one who is a legal and equitable tenant in fee simple in possession, all doubt vanishes, unless there be some other dominant consideration controlling the judgment of the court.

Crane *v.* City of Elizabeth.

But it is said that this construction of the charter, even if constitutional, nevertheless results in great injustice, by giving to the " owner " the full value of the land which may really, in equity, belong to others.   If this were true, it would certainly constitute an important element in determining the legislative will; for the courts presume that the legislature intends not only to keep within its constitutional boundaries, but also to protect every just claim, and, so far as the language of statutes permits, the courts will further these general purposes of legislation.

But we do not think that the apprehended danger actually exists.   Under the charter, all interests will, with proper vigilance, receive a reasonable protection.   The price to be paid by the city is to be the full value of all rights which may be impaired for the public benefit, and this is to be ascertained only after notice, not specially to individuals who alone may appear to guard their claims, but generally by the publicity which attends the doings of the council, and by newspaper advertisement, which may reach all alike, and under which all may be protected.   The action of the city authorities has thus the distinctive qualities of a proceeding *in rem*, a taking, not of the rights of designated persons in the thing needed, but of the thing itself, with a general monition to all persons having claims in the thing.   When, by the appraisement of the commissioners, the price of the thing is fixed, that price stands instead of the thing appropriated, and represents all interests acquired.   The legislature has not imposed upon the city officials the duty of searching out all these interests and assigning to each its just equivalent.   It has contented itself with the simple direction that the fund shall be paid to him who is presumably entitled to it, the general owner of the land.   Where no other claimant intervenes, that course will usually meet the ends of justice. But if, in any special case, this owner ought not, in equity, to receive the fund, the court of chancery will, at the instance of any interested complainant, take charge of its proper distribution, and so secure those particular equities which the generality of the statute has left without express protection.   *McIntyre* v.

*Easton and Amboy R. R. Co., 11 C. E. Gr. 425; Wheeler* v.
*Kirtland, 12 C. E. Gr. 534; Bright* v. *Platt, 5 Stew. Eq. 362;
Astor* v. *Miller, 2 Paige 68; S. C. (sub nom. Astor* v. *Hoyt), 5
Wend. 603.*

In opposition to this view, it is suggested that under the
ninety-fifth section, which requires the council to treat with the
"owners" alone, before instituting condemnation proceedings,
the city would be able to acquire or obliterate all lesser interests
by private arrangement with such owners, and without giving
the public notice, which is designed to put all parties on their
guard. Such, however, is not the legitimate result. There is
nothing in the charter which gives to the owner's conveyance to
the city any greater effect than his deed to an individual would
have, and if the corporation consents to take conveyance from
him, it must see that he is possessed of all rights which are to be
burdened by the public easement.

The construction thus placed upon the charter seems most
consonant with what it might have been supposed the legislature
would require, in conferring upon this public corporation the
power of taking lands for highways. The state's power being
untrammeled by any duty to make compensation, and yet it
being just that compensation should be made, it was probable
that some method of awarding satisfaction would be adopted
which should not cause great inconvenience to the public, and
still might afford substantial security to individuals. These
seem to be the characteristics of the law as we interpret it. But
if by the term "owner" were understood every person having
any estate or lien in the land, then there would devolve upon
the municipal authorities duties, for the performance of which
no machinery is provided in the charter; and with the best
machinery, the city officials would usually be unfitted. To im-
pose such duties under this charter would set up a scheme of
condemnation always difficult, sometimes impossible, to be exe-
cuted, and likely to involve the city in frequent and expensive
litigation.

Our conclusion is that the avenue was lawfully opened with-
out making compensation directly to the mortgagee, and that the

sale of the land on foreclosure of his mortgage will be subject to the public easement.

Let the decree below be affirmed.


MAGIE, J. (dissenting).

I cannot concur with the majority of the court upon this case.

The question involved requires the construction of section 96 of the charter of the city of Elizabeth, which provides for an award of damages to the " owner" of lands taken for public streets. When such an award is ratified, section 98 of the charter provides that the land may be converted to the public use.

Is a mortgagee of lands taken, an " owner," within the meaning of that section?

While the constitutional provision respecting the taking of property for public use does not, in our state, require compensation to be made for land taken for public streets, unless the legislature so direct, yet when the legislature does direct compensation it is in pursuance of the constitutional provision, and the legislative act gives the right to and fixes the standard of compensation. *Simmons* v. *Passaic, 13 Vr. 619.*

When a construction is to be given to a legislative act providing for compensation for lands taken for public streets, I cannot doubt that we are bound to.presume that the legislature intended to act with justice. Any construction which would produce the injustice of compensating the owners of certain interests, to the exclusion of the owners of other interests, ought not to be adopted, unless the language is so clear as to permit no other result.

The word " owner" may be, and often is, used in a restricted sense, which will not include the holder of a limited or conditional estate. Such is not its necessary meaning. In determining in what sense it is here used, we ought to consider the whole act.

By section 95 of this charter, the city is authorized to treat with the owners of lands required for streets, to purchase such lands, to make compensation and to receive conveyances thereof.

The compensation paid is to be included in the damages afterward required to be assessed on lands benefited.

There is no provision that such a conveyance should cut off and bar all limited and conditional interests in the land. The conclusion seems to me irresistible that such interests, if not purchased, would be preserved, and that the authority to purchase is broad enough to include such interests.

Now, section 96 provides for a condemnation by an assessment of the damages which any *such* owner will sustain. Such owner is the owner from whom a purchase may be made under section 95. The term, in my judgment, includes every person having an interest in the land, such as a mortgagee &c.

Did the award in this case include the mortgage interest?

The mortgagee was not named in the award. The compensation was awarded to James C. Blake, who was the owner of the equity of redemption.

Since notice to owners of a proceeding to award need only be by advertisement (section 98), that question does not arise.

But by the charter (section 99), the award is made the basis of a suit for the compensation. While the suit is given to the person " entitled to " damages, it is obvious the statute means "entitled to by reason of the award," for the award is made conclusive evidence. In this case it would conclude the mortgagee from claim, for the whole award is to Blake. The mortgagee would therefore have no claim to any part of the damages by an action at law.

I cannot believe that it was within the intention of the legislature to drive the mortgagee to a resort to equity to protect his rights. And I cannot believe it was designed to ignore his rights.

I think this justifies the conclusion that the true construction of the section in question requires that there should be an award to each person interested in the land. The doctrine of the case of *Bright* v. *Platt, 5 Stew. Eq. 362,* is not applicable.

That this construction will put the city to expense, trouble and risk in condemning land ought not to have weight in determining this question. The right of private property should be preserved by a construction that will prevent the risk of ac-

quisition by the public of a right to land by paying the owner of the equity, which may be of mere nominal value, to the exclusion of the mortgagee, whose interest may include all the land is worth.

For affirmance—The Chief-Justice, Dixon, Knapp, Reed, Scudder, Van Syckel, Cole, Whitaker—8.

