### F. & N. Salters vs. Tobias and others.

Under the insolvent law. of April, 1813, it was necessary that two thirds of the creditors residing in the United States should join in the petition, to entitle the insolvent to a discharge from the debts due to his domestic creditors.

A plea of a discharge under the insolvent act must distinctly state every fact which was necessary to give the discharging officer jurisdiction in the first instance.

In the United States, where the legislative power is limited by written constitutions, a declaratory statute cannot have the legal effect of depriving an individual of a vested right, or of changing the rule of construction as to a pre-existing law.

The recitals in an insolvent's discharge are not the only evidence of the regularity of the proceedings; neither does an omission to state in the dis-

1832.

Salters
v.
Tobias.

charge the performance of an act which was required by the statute to be done, raise a legal presumption that it was not done.

Statutes which are intended to deprive creditors of all remedy for the recovery of their debts should be construed strictly, and cannot be extended by implication beyond the fair and legitimate meaning of the terms used by the legislature.

May 28.

THIS was a bill filed against a surviving partner, and the administrators of a deceased partner, to recover a debt due from the firm; it being alleged that the surviving partner was insolvent. The defence set up by the administrators, by way of plea, was that their intestate was discharged from his debts, in the spring of 1816, under the act of April, 1813, usually called the two thirds act. The plea, after stating that the debt was contracted in this state subsequent to the passing of that act, alleged that the testator, on the 14th of February, 1816, being an inhabitant of the city of New-York, and an insolvent debtor, in conjunction with so many of his creditors who had debts bona fide owing to them by the decedent as amounted at least to two thirds of all the debts and monies owing by him, in order to obtain a general discharge, did present a petition to the recorder of New-York, praying that his property might be assigned, &c. and that he might be discharged, both from his individual and partnership debts. That such proceedings were thereupon had that the insolvent complied with all the provisions of the act, and on the 7th of May, 1816, the recorder gave him a discharge from all his debts; which discharge was set out at length in the plea. The discharge recited that the insolvent, in conjunction with so many of his creditors residing within the United States, whose debts amounted to at least two thirds of all monies owing by him, whether in his individual or copartnership capacity, presented a petition, and at the same time delivered an account of his creditors and an inventory of his estate, &c.; setting out the proceedings at length. The discharge also recited, that the recorder was satisfied that the amount signed off amounted, in the aggregate, to two thirds of all the debts due to all the creditors of the insolvent, within and without the United States. The discharge was therefore general, as to all his debts.

The plea was argued before the late chancellor, who made a decision thereon; but the decree not being settled while he

1832.

Salters
v.
Tobias.

remained in office, and the parties not being able to agree as to the effect of that decision, the plea was re-argued before the present chancellor.

*T. T. Paine & J. Duer*, for the complainants. We contend that the insolvent act of 1813 required that the petitioners, whose debts amounted to two thirds of all the debts due by the insolvent, should reside within the United States, in order to authorize a discharge of the insolvent. The insolvent act of 1801, in permitting three fourths of all the foreign and domestic creditors to petition for the discharge, opened the door to fraud. It enabled one domestic creditor to collude with the foreign creditors, and to thus deprive the other domestic creditors of their debts. The effect of a discharge under the act of 1813, as to foreign creditors, if they did not unite in petitioning, was this : If there was not due to the petitioning creditors two thirds of all the debts, then the discharge did not affect the foreign debts ; but if the foreign creditors united, so as to constitute two thirds, then their debts would have been discharged. The revised statutes are a legislative exposition of the act of 1813. (*See note of revisors to sec. 2, tit. 2, chap. 5, 1 part of R. S.*) Insolvent laws must be construed strictly. (*5 Bacon's Abr.* 389. *In the matter of Wendell,* 19 *John. R.* 153.) It was long a question whether our insolvent laws did not violate the constitution of the United States. It has therefore always been required, before the discharge could avail the insolvent, that it be fully shown that the officer granting the discharge, had jurisdiction. A statute making a new provision on the subject of a former statute is not a declaratory act. (*In the matter of Wendell,* 19 *John.* 153. *Dash* v. *Van Kleeck,* 7 *Id.* 477.) An express averment should have been made in the plea, that two thirds in value of the petitioning creditors resided in the United States, in order to give the officer jurisdiction. (*Roosevelt* v. *Kellogg,* 20 *John. R.* 208. *Servoss* v. *Heermance,* 1 *Id.* 91.) After sufficient is stated to give the officer jurisdiction, it is not necessary to set out all the proceedings. (*Frary* v. *Dakin,* 7 *John.* 75. *Wheeler* v. *Townsend,* 3 *Wendell,* 247. *Sallers* v. *Lawrence, Willes,* 413. *Turner* v. *Bealle,* 2 *Ld. Raym.* 1263. *Tully* v. *Sparkes, Idem.* 1646.) The plea should also have averred that

the petition was accompanied by the affidavits and accounts required by the act. This was also necessary to give the officer jurisdiction. It is a rule of pleading, that where the plea is susceptible of two constructions, the one most against the party pleading must be adopted. (1 *Chit. Pl.* 514, 522.) All the facts necessary to make the plea a complete bar must be stated. If a replication should be filed to this plea, the issue would be whether two thirds in value of all the creditors had petitioned for the insolvent's discharge; not whether two thirds of the domestic creditors had petitioned. Averments are requisite to avoid intendments against the pleader. (*Mitf. Pl.* 240. *Foster* v. *Vassall,* 3 *Atk.* 586. *Story* v. *Lord Windsor,* 2 *Id.* 630.) The rules of pleading are the same in equity as at law. (*Dobson* v. *Leadbeater,* 13 *Vesey,* 230.) Every thing necessary to give the officer jurisdiction must be averred. (*Wheeler* v. *Townsend,* 3 *Wendell,* 247. *Wyman* v. *Mitchell,* 1 *Cowen,* 316. *Bigelow* v. *Stearns,* 19 *John. Rep.* 41. *Cole* v. *Stafford,* 1 *Caines,* 249. *Lester* v. *Thompson & White,* 1 *John. R.* 300.) The act of 1817 does not apply to this case. The want of necessary averments in the plea is not supplied by the recitals in the discharge. The discharge is void upon its face, because it does not state the fact of which the officer must be satisfied before he directs an assignment; to wit, that the debts due to the petitioning creditors amounted to two thirds of all the U. States debts. In a statute where the intention is once clearly expressed, although subsequent words may contradict it, such construction will be adopted as will make all the parts consistent. (*Hardress' Rep.* 84. *Mallory's case,* 5 *Coke,* 112. *Plowd.* 365. *Goodtitle* v. *Whitby,* 1 *Burr.* 232.) The legislature must have had some object in altering the words of the law of 1801. That object must have been to remedy the then existing mischief—to deliver the American creditors from a dependence on the foreign creditors. As to the act of 1817, no legislature can pass a retroactive law, or impose a construction upon a previous law not warranted by law, which affects the vested rights of individuals. Where the meaning of the law has not been fixed by judicial construction, the legislature may pass a declaratory law which will be entitled to great respect, but it cannot be binding upon the court.

*C. C. King & W. Slosson*, for the defendants. The plea shows sufficient to establish the jurisdiction of the discharging officer. It is not necessary to set out all the proceedings in the plea. It is sufficient to state enough to give the officer jurisdiction, and then to allege generally that such proceedings were had, &c. and to set out the discharge. The act of 1813 has been complied with. Foreign creditors may unite in the petition, and if two thirds in value of the foreign and domestic creditors petition, the discharge will be valid. The act of 1813 was intended to give greater privileges than the act of 1801. New kinds of relief were intended by the act of 1813. If two thirds of the American creditors petitioned, and they amounted only to two thirds in value of the domestic creditors, then the discharge would have been from domestic debts only ; but if the petitioning creditors amounted to two thirds of all the creditors, both foreign and domestic, then the discharge would have been from all the debts owing by the insolvent. The act of 1817, (*Laws, p.* 45,) is declaratory of the act of 1813. The power to give the discharge is the primary power ; and the other, the petitioning for the discharge, is the secondary power, and must yield to the primary power. The words of the first section of the act of 1813 must be departed from, to effectuate the intention of the legislature as manifested in the eighth section. If two thirds of all the debts, both foreign and domestic, were signed off, then the discharge was to be general ; but if two thirds only of the domestic debts were signed off, then only the domestic debts were to be discharged. The intention of the legislature, if it can be discovered, is to be carried into effect in all cases, if possible. (1 *Kent's Comm.* 431,2. *Fitzg. Rep.* 195.) The act of 1st March, 1788, was the original insolvent act. Similar provisions were contained in the act of 1801. By the latter act, foreign as well as domestic debts could have been discharged. The act of 1811 introduced a new system. It enabled the debtor to obtain his discharge upon his own petition. This act was repealed, and the law of 1813 was then passed. That act was intended to mitigate the severity of the laws against the debtor. It therefore allowed the debtor to obtain an alternative discharge—a discharge from all his debts, if two thirds of all his debts were

1832.

Salters
v.
Tobias.

signed off, and a discharge from his domestic debts, if only two thirds of the domestic debts were signed off. Where a law is ambiguous, the intention of the legislature may be declared by a subsequent law. In the case of *Dash* v. *Van Kleeck*, (7 *John. R.* 487,) the statute had received a judicial construction. Not so with the act of 1813. In *Jackson* v. *Gilchrist*, (15 *John. R.* 89,) it was held that the legislature could pass an act confirming conveyances by feme coverts. If so, they have power to pass an act confirming insolvent discharges. This is not a case of a law impairing the obligation of contracts, or an ex post facto law. The declaration of the intention of the legislature in a law is obligatory upon the court in all cases where the right is doubtful. By the act of 1813, the discharge is made conclusive evidence of the facts therein stated, and cannot be controverted. It may be impeached for fraud, but not for want of jurisdiction in the discharging officer. The discharge is conclusive evidence of the jurisdiction of the officer. (*Jenks* v. *Stebbins*, 11 *John. R.* 224.) At law it may be necessary to aver the jurisdiction in the plea; but it is not necessary in equity, where the discharge is set out in the record. The court will not require this technical averment, where the jurisdiction appears from the discharge itself. (*Servoss* v. *Heermance*, 1 *John. R.* 91. *Frary* v. *Dakin*, 7 *Id.* 75.) It is only necessary to plead sufficient to give the officer jurisdiction, and then to allege *taliter processum fuit*, &c.

THE CHANCELLOR. The principal question in this cause is as to the true construction of the insolvent act of 1813. If it required two thirds of all the domestic creditors to petition, in order to obtain a valid discharge from domestic debts, then the plea is defective, in form at least, in not averring that the petition was presented by the insolvent, in conjunction with so many of his creditors *residing within the U. States*, whose debts amounted to two thirds. The recital in the discharge states the fact to be so; but that is not sufficient, in a plea, to show that the recorder had jurisdiction. It is now perfectly well settled, that the plea must distinctly aver every fact which was necessary to give the officer jurisdiction in the first instance. It must show that the petition was presented in the proper coun-

ty, and that two thirds of the creditors joined therein.  And these essential requisites in the plea cannot be supplied by mere recitals in the discharge.  (7 *John. R.* 75.  1 *Cowen's R.* 316. 3 *Wendell's R.* 247.  6 *Id.* 433.)  Whether it is also necessary to aver that the account of the creditors and the inventory of the estate, &c. were presented at the same time, and that the affidavits of the petitioning creditors were annexed to the petition as required by the statute, is a question which I believe has never been judicially decided in this state.   That question was distinctly raised by the counsel on the argument, but the view I have taken of the main question in this cause renders it unnecessary to decide it at this time.  If the defendants think proper to set up this discharge as a defence in their answer, they will then have an opportunity to set forth any matters, not inconsistent with the truth, to show that the recorder had jurisdiction, and that the discharge was valid.

It is not necessary for the court to enquire whether the tenth section of the act of February, 1817, (*Laws,* 4 *vol.* 45, *b.*) was intended to be declaratory of what the act of 1813 originally meant, or only to change the construction of it for the future.   The case of *Sturges* v. *Crowninshield,* (4 *Wheat. Rep.* 122,) which has been decided since that time, settles conclusively, that the legislature could not pass any law giving greater facilities to the debtor in obtaining his discharge, which would impair the obligation of any contract then existing, or authorize a discharge from such contract in a case where such a discharge could not previously have been granted.   (*Matter of Wendell,* 19 *John. Rep.* 153.)  In England, where there is no constitutional limit to the powers of parliament, a declaratory law forms a new rule of decision, and is valid and binding upon the courts, not only as to cases which may subsequently occur, but also as to pre-existing and vested rights. But even there the courts will not give a statute a retrospective operation, so as to deprive a party of a vested right, unless the language of the law is so plain and explicit as to render it impossible to put any other construction upon it.   In this country, where the legislative power is limited by written constitutions, declaratory laws, so far as they operate upon vested rights, can have no legal effect in depriving an individual of

his rights, or to change the rule of construction as to a pre-existing law. Courts will treat such laws with all the respect which is due to them as an expression of the opinions of the individual members of the legislature as to what the rule of law previously was. But beyond that they can have no binding effect; and if the judge is satisfied the legislative construction is wrong, he is bound to disregard it.

Taking the first section of the insolvent act of 1813, (1 *R. L.* 460,) by itself, the language there used seems to imply that no one but a resident of the United States could be a petitioning creditor of the insolvent, and that the amount due to such domestic petitioning creditors should amount to two thirds of all the debts owing by the insolvent, whether foreign or domestic. The language of that section is, that the insolvent, in conjunction with so many of his creditors, residing within the United States, or the attorney of any creditor whose principal resides without this state, and within the United States, whose debts amount to two thirds of all the money owing by such insolvent, may present a petition, &c. But by referring to the fifth section of the act, it is evident the legislature only intended that the debts signed off by domestic creditors should amount to two thirds of the debts of the insolvent due to creditors residing within the United States; for the officer is directed to grant the discharge, if he is satisfied of that fact. It is apparent, from the language used in the fourth and eighth sections of the act, that the legislature contemplated that foreign creditors might also become petitioners, with reference to a discharge of the insolvent from his debts due to foreign creditors. At that time it was supposed the discharge might be valid as to debts contracted out of the state. And there is no doubt it would have been effectual to discharge the debtor from all debts contracted within this state after the passing of the act, although the creditor resided out of the United States at the time of presenting the petition; provided two thirds of all the debts, foreign as well as domestic, had been signed off.

In giving a construction to this act, it must be borne in mind that the legislature not only intended to reduce the proportion of the creditors, who were to join in the application,

from three fourths to two thirds, but they also intended to adopt a new principle, by making a distinction between American and foreign creditors. It is possible that the framers of the act intended to permit domestic debts to be discharged upon the petition of foreign creditors, provided the aggregate amount of debts signed off amounted to two thirds of all the debts of the insolvent. But statutes of this description which are intended to deprive the creditor of all remedy for the recovery of an honest debt, must be construed strictly, and should not be extended by implication beyond the fair and legitimate meaning of the terms used by the legislature. Construing the act of 1813 by this rule, I am bound to say that it required two thirds of all the domestic creditors to join in the petition, to authorize a discharge of the insolvent from his debts due to domestic creditors; and that the tenth section of the act of February, 1817, if it required a different construction, introduced a change in the law which could not affect the rights of creditors as to debts previously contracted.

It may be proper to observe that if the recitals in the discharge are correct, two thirds of all the debts owing by the insolvent were signed off by creditors residing within the United States. And although the discharge recites no express adjudication of the recorder as to that fact, the defendants may perhaps be able to remedy the defect, by proper averments in their answer, and by the introduction of other proof. Although the discharge is made evidence of the facts therein contained, it is not the only evidence that can be received to show the regularity of the proceedings. And the omission to state in the discharge an act required by the statute to be done, cannot even raise a presumption that such act was not performed. (*Per Woodworth, J.* 20 *John. Rep.* 211.) In this case the discharge does recite that the recorder was satisfied that the insolvent had conformed in all things to the matters required of him by the act.

As the plea is defective, in form at least, it must be overruled, with costs; but without prejudice to the right of the defendants to insist upon the discharge, by way of defence, in their answer.