Main *v.* Green.

## MAIN *vs.* GREEN.

Notwithstanding the act of April 14, 1860, which declares that the acts of 1805, of 1813 and of 1830, conferring upon grantees of demised lands and rents and the reversion thereof, and upon the heirs and assignees of the lessor and grantees, the remedies by entry, action or otherwise, for the non-performance of any agreement, or the recovery of any rent, and extending the benefits of these provisions to grants or leases in fee reserving rents, &c. " shall not apply to deeds of conveyance in fee, made before the 9th day of April, 1805, nor to such deeds hereafter to be made," an action of ejectment, for the non-payment of rent, may be brought by the assignee of the devisee of the grantor, upon a lease made previous to 1805, where the plaintiff had acquired the rights and remedies of the original lessor previous to the act of 1860.

The legislature did not intend, by the act of 1860, to take away rights already vested or acquired, under the previous statutes ; especially those, to enforce which suits had already been brought.

It seems, the act of 1860 is to be limited to cases of rights acquired, or attempted to be acquired, under conveyances prior to 1805 and since 1860, by means of assignments or transfers made or executed since the passage of the act of 1860.

Although a mere right of entry is not assignable, so as to authorize an action by the assignee, in his own name, yet where a party, while the acts of 1805, 1813 and 1830 were still in force, and before the act of 1860 was passed, acquired by assignment the rights and remedies of the original lessor, for non-payment of rent and breach of conditions ; *Held,* that such assignee was authorized by section 11 of the code, to maintain ejectment in his own name.

Main *v.* Green.

A devise of all the testator's "lands, tenements, hereditaments and real estate situate in the manor of R," &c., together with " the appurtenances, rents, issues and profits thereof." is sufficient to transfer to the devisee rents due upon leases in fee.

An assignment of property in trust for the benefit of creditors, which conveys all the real estate of the grantor in a specified town, and all *leases*, and *reservations* and *rents* thereof, issuing therefrom, together with all *debts due* for rents of land in said town, passes to the assignee the covenants, conditions or right of entry contained in a lease in fee.

Rents reserved in a lease in fee are apportionable among the several tenants occupying the demised premises, *it seems.*

If rent is due upon such a lease ejectment will lie for its non-payment, against a tenant occupying only a portion of the land ; who cannot object that the recovery is not for the whole tract embraced in the lease, or for land not in his possession.

The assignee of the original lessee is to be deemed the *owner* of the land and liable for the rent, notwithstanding he has given a mortgage upon the premises.   Hence he is the proper person upon whom service of the notice is to be made, by the lessor or his assignee, under the act of May 13, 1846.

THIS action was ejectment, brought to recover of the defendant about 28 acres of land, in Petersburgh, Rensselaer county.   It was alleged and proved that on the 2d day of April, 1793, a deed was made, by and between Stephen Van Rensselaer, as party of the first part, and Jonathan Irish and Augustus Sheldon, as parties of the second part. By that deed the party of the first part granted, bargained, sold, remised, released and confirmed to the parties of the second part two lots of land, one of sixty-three acres, and the other of eighteen and eight-tenths: to have and to hold to the parties of the second part, their heirs and assigns forever.   Irish and Sheldon, as parties of the second part, for themselves, their heirs, executors, administrators and assigns, covenanted, promised and agreed with the party of the first part, his heirs and assigns, to pay annually seven and one-half bushels of wheat.   For the non-payment there was a clause or provision of distress, and of re-entry for the want of sufficient distress.   The provisions of the deed were detailed and minute, and were such as are usual upon the lands in the manor of Rensselaerwyck, and were substantially similar

VOL. XXXII.        29

to those recited in the case of *Van Rensselaer* v. *Hays*, (19 *N. Y. Rep.* 69.) The deed further contained a reservation of all mines and minerals, creeks, runs and streams of water, and other covenants and conditions than those above recited and referred to. The plaintiff then offered and read in evidence the last will and testament of the grantor in the foregoing deed, who died in 1839, showing that in 1839 the said grantor devised to William P. Van Rensselaer all his lands, tenements, hereditaments and real estate situate in the manor of Rensselaerwyck on the east side of Hudson's river in the county of Rensselaer, (which included the premises in question,) together with the appurtenances, rents, issues and profits thereof. The defendant objected that the will only passed the real property of the testator to his son William P., and did not pass the covenants, conditions or right of entry counted upon in the complaint. The objection was overruled, and the defendant excepted. The plaintiff also offered in evidence a deed of trust, dated September 25th, 1848, from William P. Van Rensselaer and his wife, purporting to convey to Alonzo White and others, in trust for the benefit of creditors "all their real estate" in certain towns, including Petersburgh, "and all leases and reservations and rents thereof issuing therefrom, together with all debts due for rents of lands in the said towns." The defendant objected that the said trust deed did not pass the real estate claimed in this action, nor the covenants, conditions or right of entry reserved in the first named indenture. The objection was overruled, and the defendant excepted. The plaintiff then proved the conveyance to him of all the interest of the said assignees in and to the property mentioned in the said trust deed, and the back rent thereon. The plaintiff then read in evidence the record of a judgment rendered in the Troy justices' court, between the plaintiff and the defendant, on the 9th of April, 1855, for $83.74 damages and costs, in an action for rent due upon the first mentioned grant, upon the premises claimed in this action. The defendant objected thereto

Main *v.* Green.

as irrelevant and inadmissible. The court overruled the objection, and the defendant excepted. The plaintiff then proved the service upon the defendant, on the 8th day of August, 1858, of a copy of section 3 of the act to abolish distress for rent and for other purposes, passed May 13th, 1846, together with notice of default in the payment of the rent under such indenture or lease, and of his intention, as assignee or owner, to re-enter under said indenture and the act of 1846. The plaintiff was then sworn, and testified to the defendant's occupancy for about 23 years past of about 30 acres of the land described in the deed from Van Rensselaer, to Irish and Sheldon; that four years' rent was due since the justice's judgment, which, with interest, amounted to $16 on the defendant's part. The defendant then proved a mortgage from himself and wife to one Russell J. White, of a date prior to the 8th of August, 1858, upon the premises claimed in this action, and other premises, for $1200, not yet due.

The defendant moved for a nonsuit, upon several grounds, which motion was denied, and the decision excepted to by the defendant, upon the following grounds:

1. That the deed from Stephen Van Rensselaer to Jonathan Irish and Augustus Sheldon, dated April 2d, 1793, was a deed of assignment and not of lease, leaving no reversion in the grantor, and did not create the relations of landlord and tenant. 2. That the plaintiff has failed to prove any estate, title or interest in the premises sought to be recovered, and therefore he cannot maintain his action. 3. That the plaintiff has failed to prove any assignment or transfer of even the rents to himself. They did not pass by the devise of Stephen Van Rensselaer, deceased, to William P. Van Rensselaer. That devise merely passed real estate, which had a descriptive location: mere choses in action did not pass by it. 4. That the deed of William P. Van Rensselaer, to his assignees in trust for the benefit of his creditors, did not pass the covenants and conditions or right of re-entry contained

in the deed from Stephen Van Rensselaer to Jonathan Irish and Augustus Sheldon, if such were ever vested in said Wm. P. Van Rensselaer. 5. That the right of re-entry for condition broken is a litigious right and not assignable. 6. That the payments claimed were not rent service, and if a rent charge, they were not apportionable, and the action therefore is not maintainable against the defendant to recover the portion of the lot possessed by him. 7. That the defendant was not the owner of the legal estate, but of the equity of redemption only, when the notice was served upon him, and subsequently; in other words he was not the assignee of the land, and therefore the action was not sustainable. 8. That chapter 98 of the laws of 1805, enabling grantees of reversions to take advantage of the conditions to be performed by lessees, and the subsequent re-enactments thereof having no application to the aforesaid deed in fee, made by said Van Rensselaer, to Irish and Sheldon, April 2d, 1793, this action is not maintainable. The court refused to nonsuit the plaintiff upon either or any of the grounds taken, and the defendant excepted upon each point separately and severally.

The testimony being closed, the court thereupon charged the jury that the plaintiff was entitled to recover from the defendant the possession of the premises described in the complaint and to have and to hold the same in fee; to which charge of the court the defendant excepted.

The court further charged the jury that there was due and unpaid from the defendant to the plaintiff for rent $16, and directed the jury so to find, and the defendant excepted. And the jury, under the charge aforesaid, rendered a verdict for the plaintiff accordingly. To which the defendant also excepted.

On which order judgment was entered for the plaintiff in the clerk's office of Rensselaer county, June 29th, 1860, for the recovery of said premises, and $90.83 costs.

The defendant thereupon appealed to the general term. And the cause was heard upon such appeal and the exceptions.

Main *v.* Green.

*W. A. Beach,* for the plaintiff.

*A. Bingham,* for the defendant.

*By the Court,* HOGEBOOM, J. Several of the questions discussed at bar seem to have been expressly adjudicated either in this court or the court of appeals. So far as they have been so, they must be deemed at rest, and not open to further discussion. There must be a period when discussion shall cease, and decision shall be practically conclusive, not merely between the parties to the particular suit, but as a precedent and a rule of action for other cases.

The case of *Van Rensselaer* v. *Ball,* (19 *N. Y. Rep.* 100,) was in all material respects, except a single particular, like the present case. It was an action of ejectment for non-payment of rent upon a lease or grant in fee. There was, as in this case, a covenant for the payment of rent, and clauses of distress and re-entry in default thereof. The parties in that case, as in this, claimed under the Van Rensselaer title. The plaintiff in that case was the devisee of the grantor, and the defendant was the son of the deceased grantee, having entered into possession under him. In this case the title is on each side one remove farther from the original parties, but the questions are similar, to wit, whether the covenants run with the land, and bind the successors of the original parties, taking title to and holding under the original instrument. In each case rent had been paid during the lease—the difference, if any, being in favor of the plaintiff in the present action, to whom rent had been paid in part by the present defendant, which was not so in the reported case. The very same questions now made and discussed were presented in that case. The only distinguishing feature that I am able to discover is as to the effect of the law of 1860 repealing or limiting the former statutes extending certain remedies to the grantees or assignees of reversions. (*Laws of* 1860, *ch.* 396.)

In the reported case above mentioned it was among other

things held, that the condition of re-entry, in default of the payment of rent by the grantee, his heirs and assigns, reserved and payable to the grantor and his heirs upon a conveyance in fee, was a *lawful* condition; that it made the estate granted, an estate upon condition; that upon a breach of this condition, the grantor and his heirs might re-enter; that this doctrine was held in reported cases and in the treatises of elementary writers entitled to weight as authority, and was not inconsistent with any thing contained in the case of *Depeyster* v. *Michael,* (2 *Selden,* 467.)

It was further held that these reservations of annual payments for the land or its use were essentially *rents;* notwithstanding there was no reversion remaining in the grantor in the strict feudal sense, and consequently no right of distress at the common law, independent of the express right conferred by the terms of the conveyance; that it was termed rent by the early and authoritative writers on this subject, and was one of the recognized species of rent, being a valid rent charge; that it was a rent authorizing at the common law a re-entry where such right was given in the instrument under which the parties held. It was further assumed in that case, and decided in a previous case in the same volume, (*Van Rensselaer* v. *Hays,* 19 *N. Y. Rep.* 68,) that this rent was designed by the original parties to the instrument to be, and was by the terms of the conveyance and in legal effect, perpetual, and obligatory upon the successors of the original parties who held and claimed under the original conveyance; that taking the title and claiming the possession under the instrument and by descent, devise or assignment from the original parties thereto, the subsequent parties must take the same with the burthens, covenants, conditions and incidents imposed by the terms of the conveyance and the agreement of the parties, so long as they were not inconsistent with the rules of law, with fundamental notions of right, and with elementary principles of policy. And it was argued and held that it was obviously equitable and right that an

Main *v.* Green.

annual rent, which was palpably a portion of the consideration for the purchase and perpetual use of the land, should be upheld as lawful between the original and subsequent parties, and capable of being enforced and secured as well by a direct proceeding for its recovery, as by the collateral remedy of ejectment upon the forfeiture of the premises by a breach of the covenants and conditions in the conveyance.

It was further held that no demand of rent according to the strict requirements of the common law was necessary in such a case; that the object of the statute making the service of a declaration in ejectment to stand in the place of a demand and re-entry, was to avoid " the many niceties which attend re-entries at common law;" and that the notice provided for in the third section of the act of 1846, (ch. 274,) stood in the place of the evidence of a want of goods upon which to distrain. (*See also Van Rensselaer* v. *Snyder*, 3 *Kernan*, 299.)

The references already made to the cases in 19 *N. Y. Rep.* 68, 100, which were cases, in one or the other of which all the preceding questions seem to have been directly involved, appear to dispose of all the points raised and argued at bar, except the effect of the act of the legislature passed April 14, 1860, which having been passed after the decisions above referred to and before the commencement of the present action, necessarily could not receive judicial construction in that case, but meets us in this, as a matter essential for decision. The substance of that act is that the previous legislative acts of 1805, of 1813 and of 1830, conferring upon grantees of demised lands and rents and of the reversion thereof, and upon the heirs and assignees of the lessor and grantees, the same remedies by entry, action or otherwise, for the non-performance of any agreement or the recovery of any rent, as their grantor or lessor might have had if the reversion had remained in him, and extending the benefits of these provisions to grants or leases in fee reserving rents, as well as to leases for life and for years, "shall not apply to deeds of con-

veyance in fee made before the 9th day of April, 1805, nor to such deeds hereafter to be made." To appreciate and determine the applicability and effect of this act upon the present case it will be necessary briefly to retrace our steps.

This action is brought, not by the grantor or his heirs, but by the assignee of the devisee of the grantor. The defendant claims "that the right of re-entry for condition broken is a litigious right and not assignable." And Mr. Justice Denio, in the case already so freely cited, (19 *N. Y. Rep.* 103,) was of opinion (and very probably the court concurred with him) that "no one but the grantor or his heirs could, at common law, enter for the breach of a condition subsequent;" citing *Litt. sec.* 347; *Co. Litt.* 214 *b;* 4 *Kent's Com.* 127; *Nicoll* v. *New York and Erie R. R. Co.* (2 *Kern.* 121.) He proceeded to show that the acts of 1805, of 1813 and of 1830, above referred to, and claimed to be repealed by the act of 1860, conferred "upon the assignees of a grantor reserving rent the remedy by entry for the non-payment of such rent precisely as the grantor himself had it before he parted with the right." (*Page* 105.)

In reference to this act of 1860 there are several observations which seem to be applicable. 1. The words in the act in question are not that the previous statutes are repealed, or repealed even as to conveyances before 1805 and after 1860, but that those statutes shall not *apply* to such conveyances, and it is suggested to me by my brother Gould, and the suggestion is not without force, that there is a material difference in the description of the conveyances upon which the act is designed to operate, the language in the act of 1860 being "deeds of conveyance in fee," and in the former acts "grants or leases in fee reserving rents." 2. I doubt if the legislature by this act of 1860 intended to take away rights already vested or acquired, and especially such, as in the present case, which suits had been already brought to enforce. The right had been already acquired, and according to the decision of this court in *Van Rensselaer* v. *Smith*, (27 *Barb.* 152,) the leg-

Main *v.* Green.

islature had established a "privity of contract" between the assignees of the original parties, and of course had conferred the rights incident to such a relation; and it had established the assignability of the lessor's interest, and of the remedies connected with its maintenance and enforcement. These were important rights which had been recognized by the legislature and acted on by the parties, and the statute now under consideration should not be readily construed as unsettling previously acquired rights. (*Dash* v. *Van Kleeck*, 7 *John.* 477. *Sayre* v. *Wisner*, 8 *Wend.* 661. *Wadsworth* v. *Thomas*, 7 *Barb.* 445. *Salters* v. *Tobias*, 3 *Paige*, 338. *People* v. *Supervisors of New York*, 2 *Smith*, 424. *Ely* v. *Holton*, 1 *id.* 595. *Quackenbush* v. *Danks*, 1 *Denio*, 128. *S. C.*, 3 *id.* 594; 1 *Comst.* 129.) In *Johnson* v. *Burrell*, (2 *Hill*, 239,) it is said "it is a general rule that a statute affecting rights and liabilities should not be so construed as to act upon those already existing." In *Wood* v. *Oakley*, (11 *Paige*, 403,) it is said "Courts of justice will apply new statutes only to future cases which may arise; unless there is something in the nature of the new provisions adopted by the legislature, or in the language of such new statutes, which shows that they were not intended to have a retrospective operation." In *Berley* v. *Rampacher*, (5 *Duer*, 183,) it is said that no enactment, however positive in its terms, is to be so construed as to interfere with existing contracts, rights of action or suits, unless it *expressly* declares that intention. There will be scope and verge enough for the operation of the act of 1860 if it is limited to cases of rights acquired or attempted to be acquired under conveyances prior to 1805 and since 1860, by means of assignments or transfers made or executed since the passage of the act of 1860.

3. The remedy by ejectment is but a mode of enforcing the covenant for the payment of the rent, or for taking advantage of the breach of the condition. If, as is maintained in very many cases, these covenants, with their incidental remedies, run with the land, then they are essentially and in effect new

covenants between the new parties; especially when recognized and treated as obligatory by the payment of rent in conformity with their requirements.    Independent, therefore, of any of these statutes, if this view be correct—if they bind the land and are obligatory upon the subsequent and (so to speak) derivative parties—there is no occasion for resorting to these statutes for aliment to support the present action. (*Watts* v. *Coffin,* 11 *John.* 495.    *Lush* v. *Druse,* 4 *Wend.* 313.    *Van Rensselaer* v. *Bradley,* 3 *Denio*, 135.    *Van Rensselaer* v. *Jones,* 5 *id.* 449.    *Van Rensselaer* v. *Gallup, Id.* 454.    *Van Rensselaer* v. *Roberts, Id.* 470.    *Van Rensselaer* v. *Jewett,* 2 *Comst.* 135.    *Same* v. *Same,* 5 *Denio,* 121.    *Van Rensselaer* v. *Hayes, Id.* 477.    *Van Rensselaer* v. *Snyder,* 3 *Kern.* 299.)

4. It is observable that by the act of 1860 only section 25 of chapter 1, title 4, part 2 of the revised statutes is repealed or limited; leaving the leading and important section, § 23, to stand.    (3 *R. S.* 37, ·5*th ed.*)    Section 25 is substantially and only the act of 1805; it was professedly only a *declaratory* act, and passed to *remove doubts* as to the applicability of the previous act to grants and leases in fee.    The very passage of the act implies a legislative opinion that the previous act was broad enough, when construed according to its spirit and intent, to reach grants and leases in fee, and that the later act of 1805 was enacted for more abundant caution. And the scope of the opinions both in this court and in the court of appeals, on these remedial or enabling acts, leads to the conclusion that the remedy by entry and ejectment for conditions broken, was granted to assignees of the lessor under grants or leases in fee, independent of the act of 1805. (*See Judge Gould's opinion in Van Rensselaer* v. *Smith,* 27 *Barb.* 151–153; *Judge Wright's opinion in the same case, p.* 170–173; *Judge Denio's opinion in Van Rensselaer* v. *Hays,* 19 *N. Y. R.* 82–84, *and* 92–94; *and his opinion in Van Rensselaer* v. *Ball, Id.* 103–105.)

5. It appears to me also, notwithstanding the doubt ex-

Main *v.* Green.

pressed by Judge Denio, in *Van Rensselaer* v. *Ball,* (19 *N. Y. Rep.* 104,) that the provisions of the code (§ 111) cover this case, and authorize this action to be brought in the name of the present plaintiff. It may be admitted that a mere right of entry is not assignable so as to authorize an action by the assignee in his own name; but while the acts of 1805, 1813 and 1830 were still in force, and before the act of 1860 was passed, the plaintiff lawfully acquired the rights and remedies of the original lessor for non-payment of rent and breach of conditions. Those rights were not taken away by the act of 1860, and the code requiring *all* actions to be brought in the name of the real party in interest, this action (if maintainable at all) was rightfully brought in the name of the present plaintiff, and could be brought in the name of no other person.

I have thus endeavored to discuss or dispose of all the material questions raised by the defendant, in this case. There are one or two, however, perhaps not directly covered by what has been said.

It is said that the plaintiff failed to prove any assignment or transfer of the rents to himself, inasmuch as the devise of Stephen to William P. Van Rensselaer merely passed real estate which had a descriptive location. On looking at it, however, it is seen to be a devise of tenements and hereditaments, as well as of lands; which clearly would embrace rents. The language " situate in the manor of Rensselaerwyck on the east side of Hudson's river," means more particularly that the *lands* are there situated, but is not inapplicable or inappropriate to *rents* arising out of those lands. In addition to this, the *rents, issues* and *profits* of his real estate there— which would include all his interest in real estate of any description there—are also expressly devised to William P. Van Rensselaer. This objection is not well taken.

Again; it is said that the deed of W. P. Van Rensselaer to his assignees in trust for his creditors did not pass the covenants, conditions or right of re-entry contained in the grant

in fee under consideration. Though covenants, conditions and rights of re-entry were not expressly named in the deed, I think they were sufficiently covered by the expressions used. It was a deed of all that *real estate* in the town in question, and all *leases* (which I think would carry the *contents* of the leases and the rights and remedies therein reserved) and *reservations* and *rents* thereof issuing therefrom, together with all *debts due* for rents of lands in said town.

Again; it is said that the rents were not apportionable. I think they were; but if not, *rent* would nevertheless be due, and ejectment would lie for its non-payment, and would lie against the defendant as occupant of the land. I do not see that he could object that the recovery was not for the whole tract embraced in the lease, or for land not in his possession. This objection is not available.

And lastly, it is said that the defendant having given a mortgage of the land (though the same was not yet due) he was not the owner of the land or of the legal estate therein, but of the equity of redemption merely, when the notice was served on him, and therefore was not the assignee of the land.

By our law he was the *owner* of the land, and the mortgagee had only the equitable title. (*Astor* v. *Miller*, 2 *Paige*, 77. *Morris* v. *Mowatt, Id.* 586. *Gardner* v. *Heartt*, 3 *Denio*, 232. *Waring* v. *Smyth*, 2 *Barb. Ch.* 135. *Calkins* v. *Calkins*, 3 *Barb.* 305. *Bryan* v. *Butts*, 27 *id.* 505.) He was also the occupant of the land. He was the assignee of the original lessee—liable for the rent (which the mortgagee was not)—and recognizing such liability had paid a part of the rent. I think he was the proper person upon whom service of the notice was to be made, under the act of May 13, 1846.

The judgment of the circuit court must be affirmed.

[ALBANY GENERAL TERM, September 3, 1860. *Gould, Hogeboom* and *Peckham*, Justices.]