HARVARD

32b 461
166a 492

JAMES T. MAIN *vs.* ASA C. DAVIS and NANCY DAVIS.

Where in covenant for rent due upon a lease in fee, against two persons as joint occupants of the premises, there is proof of a joint occupancy by them, and of an acknowledgment by both that they occupied under the lease, this is sufficient prima facie evidence that they held as assignees.

The assignee of a part of the premises embraced in a lease in fee, is liable for his proportionate part of the rent reserved, where the evidence does not show who the other owners of the demised premises, if any, are, and there is reason to conclude that the portion of the premises occupied by the defendants devolved upon them by operation of law.

The utmost effect of the act of April 14, 1860, (*Laws of* 1860, *ch.* 396,) is to limit the application of the act of 1805 to deeds executed between 1805 and 1860. It was not the intention of the legislature that the act of 1860 should apply to rights acquired and vested before its passage; especially where suits to enforce those rights had been commenced previous to the passage of that act

Independent of the act of 1805 or its subsequent re-enactments, the assignee of the grantor in a lease in fee may, under the provision of the code of procedure abolishing the distinction between legal and equitable remedies and requiring all actions to be brought in the name of the real party in interest, maintain an action against an assignee of the lessee for the recovery of rent.

THE plaintiff set forth, in his complaint, a conveyance in fee reserving rent, with covenants on the part of the grantee, his heirs and assigns, to pay said rent to the grantor, his heirs and assigns, and containing also clauses of distress and re-entry in default of payment. The conveyance was substantially like that contained in *Van Rensselaer* v. *Hays*, (19 *N. Y. Rep.* 68.) The complaint among other things alleged that Stephen Van Rensselaer, in 1797, sold and conveyed in fee to Josiah Granger a certain farm in Berlin in the county of Rensselaer, and that Granger covenanted to pay therefor, as rent, annually, fourteen and eight-tenths bushels of wheat. That in 1855 this same estate in fee, which had been purchased by and conveyed to Granger, was assigned to the defendant, in a part of the premises. That the plaintiff became assignee of the covenants and of all the interest of the grantor, in 1853. Upon that state of facts the plaintiff claimed that the defendants were liable to pay

him from 1843 to 1859, a part of the wheat so covenanted to be paid by Granger, and for the purpose of compelling such payment brought this action.

Upon the trial the plaintiff proved the sale and conveyance to Granger, as alleged. To prove that the plaintiff was the assignee of the covenants, he offered the will of the grantor, Stephen Van Rensselaer, deceased. By that will it appeared that the testator had devised all his lands, tenements and real estate, in Rensselaer county, to his son William P. Van Rensselaer, together with the appurtenances, rents, issues and profits thereof. The plaintiff also offered in evidence a deed from William P. Van Rensselaer to White and others, in trust for the benefit of creditors, which purported to convey all the real estate of the grantor within certain towns, including Berlin, and all leases, reservations and rents thereof, issuing therefrom, together with all debts due for rents of land in said towns. The will and the deed were both objected to by the defendants, upon the ground that they did not pass the causes of action counted upon in the complaint. The objection was overruled and the defendants excepted. The plaintiff himself testified that the defendants occupied 68 acres, and had done so since 1843; that Robert Davis occupied that portion before that time; that Nancy Davis was on there as the widow of Robert Davis; and that each had told him that they held the 68 acres under the lease, and that $249.60 was the proportionate amount of rent and interest due on the 68 acres. Upon this state of facts the plaintiff claimed to recover $249.60 as the proportionate amount upon 68 acres. The defendant moved for a dismissal of the complaint against Nancy Davis, as she occupied only as widow. Motion denied, and the defendant excepted. The defendant moved for a nonsuit, on the following grounds:
1. The deed was a deed of assignment, leaving no reversion in the grantor; the relation of landlord and tenant was not created, and there was no privity of estate or of contract.
2. The plaintiff had no interest in the estate, rents or cove-

nants. 3. The devise to W. P. Van Rensselaer was insufficient to pass them. 4. As also was the deed of W. P. Van Rensselaer to his assignees. 5. The payments claimed were not a rent service, and as a rent charge were not apportionable. 6. The defendants are owners of the land, and not the tenants of the plaintiff. 7. The law of April 14, 1860, shows that the act of 1805 and its subsequent re-enactments do not apply to the present deed. Motion for nonsuit denied, and the defendant excepted. The court instructed the jury to find a verdict for the plaintiff for $249.60, to which the defendants excepted. The jury found a verdict accordingly, on which judgment was entered, and the defendants appealed therefrom.

*A. Bingham,* for the appellants.

*W. A. Beach,* for the plaintiff.

*By the Court,* HOGEBOOM, J. The questions arising in this case are most of them similar to those in the case of *Main* v. *Green,* just disposed of.(*a*) So far as they are so, they require no further remark. The only points of difference seem to be: 1. That this is an action of covenant to recover the rent, and not ejectment to recover the premises. 2. That the defendant Nancy Davis is claimed to have been in possession only as widow, and not as a joint occupant with Asa C. Davis. 3. That the annual payments (of rent) if liable to be made at all, were a rent charge, and therefore not apportionable. 4. That the act of 1860 having declared the act of 1805 and its subsequent re-enactments not to be applicable to conveyances made before 1805, leaves no ground upon which the plaintiff can recover.

To avoid confusion it will be convenient to consider these points in the order above stated.

1. The first point made by the defendants is that the deed

(*a*) Ante, p. 448.

from Van Rensselaer to Granger, of January 21, 1797, is a deed of assignment, and not of lease or subinfeudation, leaving no reversion in the grantor, and did not create the relations of landlord and tenant, and there being neither privity of estate, nor privity of contract between the plaintiff and the defendants, the defendants are not liable.

These objections are all disposed of by the decision of the court of appeals in *Van Rensselaer* v. *Hays*, (19 *N. Y. Rep*: 68.) In that case the action was covenant, to recover rent upon a conveyance in fee by the devisee of the lessor against the assignee of the lessee of part of the premises. The instrument upon which the right to recover was based, was in all material respects like the one under consideration. The questions presented were substantially similar, and the court of appeals held the plaintiff entitled to recover. They held 1. That it was the manifest design of the parties to the instrument to create relations which should exist in perpetuity and to impose the obligation to pay the rent and confer the right to receive the rent upon the heirs and assigns of the original parties; and that it was the object of the legislative act of 1805 to recognize the long existence and validity of such relations, and to make the grants available according to the intention of the parties. (*Id*. 71.) 2. That while under such an instrument there was no reversion in the grantor in the sense of the law of tenures, and therefore no right of distress at common law, yet the right of distress and re-entry being conferred by the terms of the deed, the rent was a valid rent charge and available to the grantor by means of the clause of distress. (*Id*. 76, 77.) 3. That this rent, though not strictly an estate in the land, was nevertheless a hereditament and descendible to the heirs of the grantor. (*Id*. 77 *to* 79.) 4. That while some English cases, and the authority of Sir Edward Sugden, led to the conclusion that the covenant to pay the rent, in an instrument of this character, was a covenant annexed to the thing granted, and ran with the rent in the hands of an assignee, the rent charge being

Main *v.* Davis.

an incorporeal hereditament issuing out of the land and the land being bound by it, nevertheless doubt was thrown upon the correctness of that proposition as being the law of this state by the case of *Devisees of Van Rensselaer* v. *Executors of Platner,* (2 *John. Cas.* 26.) But this being the state of things, the statute of 1805 was passed, giving to grantees of lands and rents and the reversion thereof and the assignees of the lessor, in grants or leases in fee reserving rents, as had been before done in leases for life or years, the same remedies by *entry, action,* distress or otherwise, for the non-performance of any agreement in the lease or grant, or the recovery of any rent, or for the doing of any act of forfeiture, as their grantor or lessor had or might have had if the reversion had remained in him; that the act was constitutional, and the legislature had a right to consider the interest of a grantor in fee reserving rent as a *reversion, pro hac vice,* if it thought proper to do so; and that as a result of this legislation, whether it would have been so at common law or not, the *devisee* of Van Rensselaer (and by consequence any *other assignee* of the lessor) had a right to sue any one upon whom that covenant was binding. (*Id.* 79 *to* 86.)

5. That it was a debated question in the English courts whether an assignee of the grantee in such an instrument was liable upon the covenants in the deed, and it was the conclusion of Sir Edward Sugden, upon a review of the English cases, that he was; that the argument of the defendant that such covenants cannot by any form of stipulation in the deed be made to run with the land, except there be a reversion in the covenantee, does not rest upon any sound reason; that there exists a certain kind of privity between the parties; that the second section of the "act to enable the grantees of reversions to take advantage of the conditions to be performed by the lessees," taken in connection with the act of 1805, "establishes a privity of contract between those holding a derivative title under both grantors and grantees, and the

intention of the legislature, apparently, was to place the assignees of both parties upon grants in fee where a rent was reserved, upon the same footing which was occupied by the assignees of the parties to a lease for life or years under the statute of Henry 8th, and the re-enactment of it in this country." That the course of adjudication in this state for a long series of years assumed and established the liability of assignees of the grantee, upon grants or leases of this description, for the rent accruing after the assignment, and "necessarily affirmed that these covenants, as to their burden, ran with the estate of the grantee in the land; as those referred to under the preceding head determined that their benefit accompanied the estate of the grantor in the rents." That these decisions accorded with the expressed intent of the parties to the conveyance, and established a rule of property from which it would now be unsafe and improper to depart. They therefore held that the defendant, as the assignee of the lessee of a portion of the land granted, was liable in this action for a breach of the covenants. (*Id.* 86 *to* 94.)

I have quoted thus freely from the substance and in many instances from the language of the opinion of the court in the case above referred to, for the purpose of showing that all the more material questions presented on this argument were expressly disposed of and necessarily decided in the case of *Van Rensselaer* v. *Hays;* and with the view of grouping together in a somewhat more compact form the conclusions and some of the reasons of the court in that case.

These questions cannot be regarded as any longer open to discussion in this court. They have been settled by a superior tribunal, and must form the rule of action for us. It would be fruitless—perhaps indecorous—to examine at length the reasons upon which they are founded. It is sufficient to say that the questions are learnedly and ably discussed, and that the conclusions arrived at commanded the concurrence of all the judges who took part in the decision of the case.

2. It is urged that the defendant Nancy Davis was entitled

to judgment, and not liable to the plaintiff, not being an assignee of the lessee.

But the uncontradicted proof is of a joint occupancy by the defendants, and an acknowledgment by both that they occupied under the lease. This is sufficient prima facie evidence that they held as assignees. (*Quackenboss* v. *Clarke*, 12 *Wend.* 555. *Acker* v. *Witherell*, 4 *Hill*, 112. *Lush* v. *Druse*, 4 *Wend.* 318. *Armstrong* v. *Wheeler*, 9 *Cowen*, 88.)

3. It is objected that the rents are not apportionable, being a rent charge, and that therefore the plaintiff cannot recover. The court of appeals has decided, in the very recent case of *Van Rensselaer* v. *Chadwick*, (*MS. September Term* 1860,) that as a general rule rent charges are not apportionable. But that case also recognizes a well established exception to the general rule, to wit, that when the division of the land into parcels occurs by operation of law, and not by the act or release of the parties, an apportionment takes place. It is not unfair to conclude in this case that the portion of land occupied by the defendants in this case devolved upon them by the death of Robert Davis, the father of Asa C. Davis, and the proprietor of the entire tract, or of that portion occupied by the defendants as their proper proportion of the estate of the deceased. But assume that an apportionment cannot legally be made, does it prevent the plaintiff's recovery ; or would not the consequence rather be in the present state of the proof, that the defendants would be liable for the whole rent? The evidence does not show who the other owners, if any, are ; and there is therefore no reason for dismissing the complaint upon that ground. And it certainly is not apparent why the defendants are not liable for the rent—at least in part—and if not capable of division, then for the whole. In the case of *Van Rensselaer* v. *Hays*, (19 *N. Y. Rep.* 68, 99) the defendant was held liable as assignee of a part of the premises ; although this question of apportionment was not discussed in the opinion of the court and possibly may not have been presented on the points.

The general doctrine that rents in similar leases are apportionable has been held in several adjudicated cases. (*Van Rensselaer* v. *Bradley*, 3 *Denio*, 140. *Van Rensselaer* v. *Gallup*, 5 *id.* 454. *Van Renssslaer* v. *Chadwick*, 24 *Barb.* 334. *Astor* v. *Miller*, 2 *Paige*, 78. *Van Rensselaer* v. *Jones*, *Id.* 643.)

4. The effect of the act of 1860 (*Laws of* 1860, *ch.* 396) upon the right to bring the action remains to be considered. The utmost effect of that act is to limit the application of the act of 1805 to deeds executed between 1805 and 1860. I have discussed its bearing and operation upon these grants or leases in fee in the case of *Main* v. *Green*, and the remarks there made are applicable to this case. I endeavored among other things to show, independent of the phraseology of the act, which left it doubtful whether it was applicable to grants or leases in fee reserving rents, that it was not probable that the legislature designed the act to apply to rights acquired and vested before its passage; and if the court of appeals is right in supposing that the legislature by the act of 1805 virtually established a *reversion* as the interest of. the grantor in a grant in fee reserving rent, (*p.* 83), and a *privity of contract* between those holding a derivative title under both grantors and grantees, (*p.* 92,) I apprehend it was impossible for the legislature, by what they have done in the act of 1860, to overthrow that relation, or the rights which have grown up under it; especially in cases like this, where suits were commenced before the passage of the act. (*Palmer* v. *Conly*, 4 *Denio*, 374; *S. C.* 2 *Comst.* 182. *Bradstreet* v. *Clarke*, 4 *Wend.* 211. *Aymer* v. *Gault*, 2 *Paige*, 284.) At least it is so improbable that they intended to do so that we are bound to assume the contrary, until more explicit evidence of such intent is supplied. (*Jarvis* v. *Jarvis*, 3 *Edw.* 462. *Wadsworth* v. *Thomas*, 7 *Barb.* 445. *Salters* v. *Tobias*, 3 *Paige*, 338. *Berley* v. *Rampacher*, 5 *Duer*, 183. *Wood* v. *Oakley*, 11 *Paige*, 400. *Johnson* v. *Burrell*, 2 *Hill*, 238.) However that may be, I do not see that the

plaintiff is dependent upon the act of 1805 or its subsequent re-enactments, for the maintenance of the action. The case of *Van Rensselaer* v. *Hays,* before cited, holds, that at all events the parties bound to pay the rents were liable, independently of the statute, to an action at the suit of the original grantor and his heirs; that in *equity* they were transferable, and transferred to the subsequent owners of the rents, and that the code of procedure by abolishing the distinction between legal and equitable remedies and requiring all actions to be brought in the name of the real party in interest, conferred upon the plaintiff the necessary legal capacity to institute the action. (19 *N. Y. Rep.* 85.)

The course of legal adjudication seems to have left no ground upon which the defendant can securely stand, and the result is that the judgment of the circuit court must be affirmed.

[ALBANY GENERAL TERM, September 3, 1860. *Gould, Hogeboom* and *Peckham,* Justices.]