The statute of 1870 (chap. 163) was enacted with a view to put the banking associations of the State on the same footing as the national banks doing business within this State, in the matter of discounts, and the rate of interest or discount they might by law receive, and the penalty for exacting or reserving usurious interest.
Standing by itself, the first section of the act without qualification or explanation, in effect, repeals by implication the general statute against usury quoad banking associations organized under the laws of this State. The section makes careful and full provision in respect to the interest which may be taken or received by such associations upon loans and discounts, and declares the forfeiture which shall be incurred as the penalty for exacting or receiving interest in excess of that allowed by the act to be taken. Banking associations are, by implication, taken out of the general usury laws of the State, so far as civil remedies are concerned, and so far as the laws invalidate obligations tainted with usury, and are subject only to the forfeiture and penalty prescribed by that act. The law implies an intention of the legislature to make a later act covering the whole ground of a prior statute a substitute for such prior law, and in this case it would imply an intention to substitute the civil remedies, penalties and forfeitures, for taking and reserving usurious interest by banking associations, for those provided and imposed by the general statutes of the State. But the repeal of former statutes is not express, but depends upon the intent of the legislature, as indicated by the act itself, and the implication may be repelled by other provisions of the same act, or by the express declaration of the legislature. The statute is an affirmative statute, that is, its provisions are affirmative without an express negative, and if in such a statute a negative is neither expressed or implied, the previously *Page 62 
existing common law and statutory remedies may still exist. (Dwarris on Statutes, 474; Sedgwick on Statutes, 38, 39, and cases cited; Potter's Dwarris, 70.) Unless there is, in the act itself, a clearly expressed intent not to make the provisions of the first section a substitute for the existing statutes, so far as the banking associations of the State are concerned, I should be of the opinion that the associations were taken out of the operation of the existing statutes, and subjected only to the penalties of the act of 1870.
The second section of the act is peculiar, and, so far as I am aware, without precedent. It is more than a mere recital of the causes that led to the passage of the act, or a statement of the evils intended to be remedied, or the rights and interests intended to be advanced. It is a statutory declaration contained in the body of the act itself, of the meaning of the act as well as the intent of the legislature in enacting it. Declaratory laws explanatory of statutes have been passed, but have had no force in changing or altering the exposition and construction of laws retrospectively. They have only had effect as changing the rule for the future. Past transactions and rights acquired prior to the passage of the expository or declaratory statute, have necessarily been governed and controlled by the law expounded by the courts in the application of the ordinary rules of interpretation, and without regard to the legislative declaration in favor of any other construction. (People v. Board ofSupervisors of N.Y., 16 N.Y., 424; Postmaster-General v.Early, 12 Wheat., 136.) "A mistaken opinion of the legislature concerning the law does not make law." But the legislature may make law for the future. (Salters v. Tobias, 3 Paige, 338.) The cases which have arisen heretofore have merely involved the effect of an interpretation by one legislature of a written statute enacted by another body of legislators, and it has been held that the legislature had not the constitutional power to change the laws of language. But the right of the legislature enacting a law to say in the body of the act what the language used shall, as there used, mean, and what shall be the legal *Page 63 
effect and operation of the law, is undoubted. If they have mistaken the meaning of the words they have used, when read in their ordinary and popular sense, or as legally and technically understood, still they may, in terms, declare what the law shall be for the future, under and by virtue of the terms employed. This the legislature has undertaken to do by the act of 1870, and have guarded against an absolute repeal of the usury laws quoad
the banking associations of the State, by enacting that the true intent and meaning of the act was to place those associations on an equality in the particulars in the act referred to with the national banks. Possibly the legislature interpreted and construed the act of Congress as limiting the penalty and forfeiture for the taking or reserving of usurious interest by the national banks to the loss of the interest and a liability to pay twice the amount of interest actually received; but while they employed the language of one part of the national act, they carefully guarded against any mistake or error in the construction and effect of the law itself. The positive declaration is, and it is mandatory, that the intent and meaning — that is, the operation and effect — of the act shall be to subject the State banking associations to the same penalties and forfeitures, and to test the validity of their transactions, and the bills and obligations discounted or purchased by them, by the same rules as are applied to national banks. The usury laws are applicable in all their force to national banks doing business within this State, and notes and obligations taken or discounted by them upon a usurious consideration are absolutely void. (First National Bank of Whitehall v. Lamb, 50 N.Y., 95.) To hold that State institutions are not subject to the same forfeiture and loss by reason of a violation of the laws regulating the rate of interest, would be in direct conflict with the mandate of the law under which the exemption is claimed, as it would destroy that equality of privilege and liability at which the legislature aimed.
There is no pretence, and could be none, that it was intended to take State banks out of the operation of the *Page 64 
statutes against usury, as a favor to them, or for reasons of public policy, and irrespective of the legal status of national banks. The law is operative in giving the borrower or other person actually paying to banking associations more than the legal rate of interest, the right to recover twice the amount paid, if the action is commenced within two years. This is a departure from the prior laws of the State, and places the State and national banks upon an equality.
The question is a very narrow one, and is simply whether a repeal of a statute to a limited extent, by implication, is prevented by a positive and mandatory declaration that the statute relied upon as thus operative and effectual should not be thus construed and made effectual, except as necessary to place State and national institutions on the same footing, and we are of the opinion that an intent cannot be implied, in disregard of and in conflict with this positive mandate to the contrary.
The judgment must be reversed, and a new trial granted