ELI B. AMES *vs*. CHARLES M. WILKINSON, Assignee.

August 24, 1891.

**Insolvency—Discharge—Sureties not Released.**—Under the insolvent act of 1881, the discharge of the insolvent is a discharge by operation of law, and the execution of the formal release by a creditor in pursuance of the statute, as a condition of sharing in the assets, does not operate to release the sureties of the insolvent debtor.

Action brought in the district court for Hennepin county, and heard and determined by *Lochren*, J., on an agreed statement of facts in substance as follows: On May 20, 1887, plaintiff lent the Duke Soap Co., a corporation of this state, $500 on its promissory note payable 90 days thereafter, and indorsed by Slocum before delivery, to guarantee its payment. The note being unpaid at maturity, plaintiff sued the maker and Slocum in the district court for Hennepin county, and on October 19, 1887, recovered judgment against them both. On September 7, 1887, the corporation, being insolvent, made an assignment under the insolvency act (Laws 1881, *c.* 148,) and in the insolvency proceedings the plaintiff proved his claim on the note and judgment and filed the required release, reserving therein all his rights as against Slocum, "and by this release only releasing said Duke Soap Company from liability under said judgment," and received a dividend of $120. On October 3, 1887, Slocum also made an assignment in insolvency to one Baker, who accepted and acted as assignee, and upon whose subsequent resignation the defendant was appointed assignee in his stead. Afterwards and before the declaration of any dividend, the plaintiff, as a creditor by reason of the note and judgment, filed proof of claim against Slocum's estate, with a proper release. The claim was disallowed by defendant, and the plaintiff appealed. Upon these facts judgment was ordered and entered disallowing the claim, and the plaintiff appealed.

*Benton & Roberts* and *Rome G. Brown*, for appellant.

*Fletcher, Rockwood & Dawson*, for respondent.

VANDERBURGH, J. This case calls for a determination of the ques-

tion whether, under the insolvent law of 1881, and prior to the amendment of 1889, the acceptance of dividends and filing the statutory release by a creditor, upon the discharge of an insolvent principal debtor, operate *per se* to discharge the sureties of such debtor in respect to debts proved by the creditor in the insolvency proceedings.

This court has held that the act in question has all the essential elements of a bankrupt law, though limited in its operation and effect, as respects the distribution of the debtor's assets and the discharge of his liabilities, to such creditors as should become parties to the proceedings. And in *Denny* v. *Bennett*, 128 U. S. 489, 497, (9 Sup. Ct. Rep. 134,) the supreme court of the United States sustain the validity of the provisions of the act for the declared purposes thereof.

The general doctrine gathered from the decisions of the courts and text-writers is that the discharge of an insolvent debtor under the provisions of bankrupt laws does not operate to release his co-debtor or surety, and this is so held independently of the saving clause usually found in bankrupt acts. *Tooker* v. *Bennett*, 3 Caines, 4; *In re Stevens*, 1 Sawy. 397, and cases cited. If two defendants be taken under a joint *ca. sa.*, and one be subsequently released under an insolvent debtor's act, that will not inure to the benefit of the other, though there be no statute on the subject. *Nadin* v. *Battie*, 5 East, 147; *Ward* v. *Johnson*, 13 Mass. 148; *Claflin* v. *Cogan*, 48 N. H. 411. And so, also, in relation to sureties, the general rule that a surety is released by the release of his principal is not extended to releases by operation of law. Brandt, Sur. § 126; Bish. Insolv. 53. These principles are, we think, applicable to the act in question here. Its purpose is to secure "an equal distribution of the property of debtors among their creditors, and the release of debts against debtors." And the benefit of its provisions, which are to be construed strictly, is limited to the debtors entitled to a discharge under the act. *Andrew* v. *Macklin*, 6 Best & S. (118 E. C. L.) 201; *Salters* v. *Tobias*, 3 Paige, 338.

But the chief objection urged to the application of this rule to our insolvent law is the alleged voluntary character of the release executed

by the creditors. But this objection is specious, and will not bear investigation. Treating this act as a bankrupt law, it is a very superficial view to take of its effect and operation. A creditor is not, it is true, obliged to become a party to the proceeding, and, if he does not, his debt remains in force, and the legal liability of the debtor is unchanged as to him; but assuming, as we must, that the debtor who is adjudged insolvent is really so, it is a matter of great importance to him that he have the privilege of sharing in the assets, which he can be allowed to do only on the conditions prescribed by the statute, among which is the obligation to file the required release, and consent to the judgment. It is the mode of procedure provided by law to secure a settlement and division of the estate of the insolvent, and to secure the discharge provided for; and it is so far compulsory that the creditor is obliged to yield a substantial right or submit to its requirements, and, notwithstanding its peculiar nature, the discharge of the debtor is one by operation of law, intended for his benefit solely, and must be held to have the same effect in law as a discharge under a general bankrupt law. In *Sigourney* v. *Williams*, 1 Gray, 623, the court, alluding to this question, says: "Whether, therefore, the discharge was obtained by the consent of the creditors or without, it was a discharge obtained pursuant to law, having the effect given it by law, and no more, to discharge the individual, but not to discharge his partner." The proposition seems to us a plain one, and we do not deem it necessary to cite additional authorities in support of it. This construction works no injustice to the surety. The obligation of a surety necessarily involves the contingency of the insolvency of the principal debtor. He must pay if the latter is unable to pay; that is the object of his contract. If he pays the debt seasonably, he may prove it against the insolvent, and share in the distribution. If he neglects to do so, and the creditor receives the dividend, his own liability is reduced to that extent; and so he will profit, rather than lose, by the fact that the creditor became a party to the proceedings. Again, if the surety pay the debt subsequent to the discharge of the debtor, a new liability is thereby created, which is not barred by the discharge, and which he may thereafter enforce, unless, by the terms of the statute, the surety's liability may be adjusted and proved

as a claim in the insolvency proceedings.  Brandt, Sur. § 189; *Buel* v. *Gordon*, 6 John. 126.

The other assignments of error do not, we think, require discussion.  The result is that the plaintiff is entitled to prove his claim against the estate of Slocum, who was indorsee upon the note described in the complaint, notwithstanding the discharge of the principal debtor in the insolvency proceedings against him, to which the plaintiff was also a party.

Judgment reversed, and cause remanded for further proceedings.